**Brian BOWLING, Petitioner**

v.

**OFFICE OF OPEN RECORDS,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2009.

Decided Feb. 5, 2010.

David A. Strassburger, Pittsburgh, for petitioner.

Corinna V. Wilson, Chief Counsel, Harrisburg, for respondent.

Patrick A. Kane, III, Asst. Counsel, Harrisburg, for intervenor, Penna. Emergency Management Agency.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and BUTLER, Judge.

OPINION BY Judge SIMPSON.

This appeal from a Commonwealth administrative agency concerns the recently re-enacted Right–to–Know Law (Law).[1] Brian Bowling (Requester), an employee of the Pittsburgh Tribune–Review, petitions for review from a final determination of the Office of Open Records (OOR)[2] granting in part his request for records of goods and services the Pennsylvania Emergency Management Agency (PEMA) purchased with Department of Homeland Security (Homeland Security) grant funds. PEMA granted the right-to-know request but redacted the identities of the recipients of the goods and services purchased. It also redacted records pertaining to the Buffer Zone Protection Program.[3] The OOR denied Requester's appeal concluding PEMA properly withheld the recipients' names under Section § 708(b)(2) of the Law, 65 P.S. § 67.708(b)(2) (exemption from disclosure of public records pertaining to military, homeland security, national defense, law enforcement, or public safety).

In this appeal, we address the manner of judicial review of an OOR determination as well as issues raised in Requester's petition for review. Requester questions: whether documents disclosing the identities of recipients of emergency response equipment purchased by PEMA are public records under the Law; whether those documents are exempt from access on the basis their release would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity; and, whether Requester is entitled to the information sought in a medium in which it exists. Concluding PEMA redacted the records requested in a manner inconsistent with the Law, we reverse and remand to the OOR with instructions for further remand to PEMA for refinement of the redactions.

## I. The Right–to–Know Law

In 2008, the General Assembly passed the new Right–to–Know Law, which made sweeping changes to access of government records. In addition to the issues raised on appeal, we are particularly concerned with the Law's procedures for review of right-to-know determinations. The following is a brief overview of the new procedures set forth in the Law.

Pursuant to Section 502 of the Law, each agency must designate an official or employee to act as an open-records officer. 65 P.S. § 67.502. Among other duties, the designated individual issues the agency's final response to a request for public records. *Id.*[4] In denying a request in whole or in part, the open-records officer must provide a written description of the record requested with specific reasons for the denial. Section 903 of the Law, 65 P.S. § 67.903.

If the agency denies the request, or it is deemed denied, a requester may file an

---

**1.** Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104. The Law repealed the former Right–to–Know Law, Act of June 21, 1957, P.L. 390, *as amended, formerly* 65 P.S. §§ 66.1–66.4.

**2.** The General Assembly established the Office of Open Records (OOR) as part of its overhaul of Pennsylvania's former Right–to–Know Law. The OOR is within the Department of Community and Economic Development. *See* Section 1310 of the Law, 65 P.S. § 67.1310.

**3.** According to PEMA, the Buffer Zone Protection Program identifies sites within the Commonwealth that the Department of Homeland Security designates as "critical infrastructure." Reproduced Record (R.R.) at 8a.

**4.** *See also* Sections 705 (creation of record), 706 (redaction), 707 (production of records) and 901 (agency response) of the Law, 65 P.S. §§ 67.705–07, and § 67.901.

appeal with the OOR. OOR assigns an appeals officer to review the decision of the agency's open-record's officer, and to issue an order and opinion disposing of the appeal. Section 1310 of the Law, 65 P.S. § 67.1310. Notably, the appeals officer may, in his or her discretion, conduct a hearing prior to issuing a final decision. Section 1101(b)(3) of the Law, 65 P.S. § 67.1101(b)(3). The appeals officer must provide a written explanation for the decision. *Id.*[5]

Chapter 13 of the Law governs judicial review. If the appeals officer's final determination relates to a decision of a Commonwealth, legislative or judicial agency, the requester or the agency may file a petition for review with the Commonwealth Court. Section 1301(a) of the Law, 65 P.S. § 67.1301(a). If the appeals officer's final determination relates to a decision of a local agency, the requester or the local agency may file a petition for review with the court of common pleas for the county in which the agency is located. Section 1302(a) of the Law, 65 P.S. § 67.1302(a). The court's decision on appeal "shall contain findings of fact and conclusions of law based upon the evidence as a whole" and "clearly and concisely explain the rationale for the decision." 65 P.S. §§ 67.1301(a) and 1302(a). The record on appeal consists of the request, the agency's response, the appeal filed with the OOR, the hearing transcript, if any, and the final written determination of the appeals officer. Section 1303(b) of the Law, 65 P.S. § 67.1303(b).

The current right-to-know request proceeded through the newly enacted procedure.

## II. Facts

On January 2, 2009, Requester filed a written request with PEMA seeking all invoices and contracts for first responder equipment and services which PEMA purchased with Homeland Security funds for fiscal years 2005–08. Reproduced Record (R.R.) at 6a–7a. Over the next several days, Requester and PEMA's Open–Records Officer clarified the request to mean "electronic spreadsheets maintained by PEMA containing information regarding equipment procured for the nine (9) regional counterterrorism task forces with 2005–08 Homeland Security grant funds." *Id.* at 8a.

PEMA granted the request and created a ".pdf" document of the invoices.[6] However, PEMA redacted some information purportedly exempt from disclosure pursuant to Sections 708(b)(2) (relating to military, homeland security, national defense, law enforcement, or public safety) and 708(b)(3)(ii) of the Law (relating to safety or security of buildings, public utilities, resources, infrastructure, facilities, or information storage systems). 65 P.S. §§ 67.708(b)(2), (b)(3)(ii).

PEMA first redacted the names of *all* recipients of the equipment procured as critical information that reveals gaps, vulnerabilities and emergency response capabilities in the Commonwealth. R.R. at 8a. PEMA explained disclosure of the recipients' names would be reasonably likely to

---

5. Pursuant to Section 1309 of the Law, 65 P.S. § 67.1309, the provisions of 2 Pa.C.S. (relating to administrative law and procedure) do not apply to the Law unless specifically adopted by regulation or policy.

6. "PDF" stands for "portable document format." A ".pdf" is a file format which cap-

tures formatting information from desktop publishing applications making it possible to send documents and have them appear on the recipient's monitor as they were intended to be viewed. Available at *www.webopedia.com/ DidYouKnow/Computer_Science/2005/pdf.asp.*

jeopardize or threaten public safety or preparedness or public protection activities. *Id.* PEMA also redacted information pertaining to the Buffer Zone Protection Program on the ground that the information discloses sites in the Commonwealth designated as critical infrastructure. *Id.* PEMA explained that disclosure would be reasonably likely to endanger the safety and/or physical security of a Program building, public utility, resource, infrastructure, facility or information storage system. R.R. at 8a–9a.[7] As such, the redactions constituted a partial denial of Requester's request.

Requester appealed to the OOR. First, Requester disputed PEMA's conclusion that disclosure of the names of the recipients of goods purchased would show gaps, vulnerabilities and emergency response capabilities in the Commonwealth. According to Requester, such documentation would show fortification of the Commonwealth's emergency response capabilities. Second, although not disputing non-disclosure of Buffer Zone Protection Program records, Requester asserted the redactions relating to the Program must be more clearly identified to enable meaningful review of PEMA's redaction of the names of the recipients of the goods and services purchased. Finally, Requester challenged the format by which PEMA satisfied his request. PEMA provided Requester with a ".pdf" version of the records even though it maintains the records in a Microsoft Excel spreadsheet.

The OOR Appeals Officer permitted PEMA and Requester to file memoranda in support of their respective positions; however, the OOR Appeals Officer did not conduct a hearing. The OOR Appeals Officer first determined PEMA did not violate the Law by providing Requester a ".pdf" file of the records. OOR Dec., 4/17/09, at 9. The OOR Appeals Officer concluded that the Law authorizes inspection and duplication of public records but does not require the records be provided in a manner subjecting them to alteration or manipulation. *Id.*; *see* Section 701(b) of the Law, 65 P.S. § 67.701(b) ("[n]othing in this act shall be construed to require access to any computer either of an agency or individual employee of an agency.").

The OOR Appeals Officer further determined PEMA properly redacted information identifying the recipients of goods and services procured through Homeland Security grants. PEMA persuaded the OOR Appeals Officer there is a strong connection between knowing what entities receive emergency equipment and a threat to public safety. According to the OOR Appeals Officer, PEMA provided examples of how disclosure of the recipients' identities would expose vulnerabilities and gaps in emergency preparedness and could point terrorists in the direction of high profile or weak targets.[8] OOR Dec., 4/17/09, at 10.

**7.** PEMA also reasoned Buffer Zone Protection Program information is exempt from disclosure under the Homeland Security's Protected Critical Infrastructure Information Program. *See* Critical Infrastructures Protection Act of 2001, 42 U.S.C. § 5195c. Records designated as critical infrastructure information are exempt from disclosure under the Freedom of Information Act (FOIA) as well as state and local disclosure laws. *See* FOIA, 5 U.S.C. § 552(b)(3) (protection from disclosure of records by statute); 6 U.S.C. § 133(a)(1)(A) (protection of voluntary shared critical infra-

structure information). "Critical infrastructure" is defined as "systems and assets, whether physical or virtual, so vital to the United States that the incapacity or destruction of such systems and assets would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters." 42 U.S.C. § 5195c(e).

**8.** In its supporting memorandum, PEMA maintained knowledge of the location of the goods and services: draws a map to equip-

Requester now appeals the OOR Appeals Officer's determination. PEMA appears as Intervenor.[9]

## III. Preliminary Considerations

Before we reach the merits of Requester's appeal, we first resolve questions regarding the standard and scope of judicial review of an OOR decision. Requester submits our standard of review is *de novo* where the Law directs this Court to issue findings and conclusions based on the evidence as a whole. 65 P.S. § 67.1301(a). This is more in line with our original jurisdiction rather than with deferential appellate review. Conversely, PEMA urges application of the traditional, three-pronged appellate standard of review for administrative agency determinations: whether the record supports the findings of fact, whether errors of law were committed, or whether constitutional rights were violated.

In a detailed discussion, our Supreme Court clarified in *Morrison v. Department of Public Welfare, Office of Mental Health (Woodville State Hosp.)*, 538 Pa. 122, 131, 646 A.2d 565, 570 (1994), that "scope of review" and "standard of review" refer to two distinct concepts and should not be confused. Considering a motion for new trial, the Court explained:

"Scope of review" refers to "the confines within which an appellate court must conduct its examination." *Coker v. S.M.*

*Flickinger Company, Inc.*, 533 Pa. 441, 450, 625 A.2d 1181, 1186 (1993). In other words, it refers to the *matters* (or "what") the appellate court is permitted to examine. In contrast, "standard of review" refers to the *manner* in which (or "how") that examination is conducted. In *Coker* we also referred to the standard of review as the "degree of scrutiny" that is to be applied. *Id.*, 625 A.2d at 1186.

### A. Standard of Review

■ For the following reasons, we conclude that a reviewing court, in its appellate jurisdiction, independently reviews the OOR's orders and may substitute its own findings of fact for that of the agency.

**1.**

■ Initially, we examine the statutory language providing for judicial review. Section 1301(a) of the Law provides that decisions of the reviewing court shall contain findings and conclusions based on the evidence as a whole. 65 P.S. § 67.1301(a). This express duty of fact-finding is consistent with a standard similar to *de novo* review.

Also, Section 1309 of the Law specifies that the provisions of 2 Pa.C.S. (relating to administrative law and procedure) shall *not* apply unless specifically adopted by regulation or policy. 65 P.S. § 67.1309. As

---

ment that terrorists may wish to destroy or steal; allows terrorists to formulate plans to circumvent the protective equipment; and, makes target selection easier. In addition, PEMA attached to its memorandum three documents: a 2009 Taskforce Allocation Formula; a formula for assessing "risk"; and, an affidavit James F. Powers, Director of the Department of Homeland Security for PEMA. The director's affidavit reinforces PEMA's position that knowledge of even insignificant goods can be critical pieces of information to

the Commonwealth's safety and security. *See* OOR Record, at Tab 8.

Requester submitted an October 2007 Legislative Budget and Finance Committee report, "A Review of Pennsylvania's Homeland Security Program." The purpose of the report was to address the need to strengthen and clarify Pennsylvania's homeland security program and expenditure of funds. OOR Record, at Tab 21.

9. The Pennsylvania Newspaper Association appears as *amicus curiae*.

a result, among the provisions which do *not* apply to the Law is Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704 (disposition of appeal), which provides, with emphasis added:

> The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, *the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.* If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

Thus, the Law commands that the usual deferential standard of review on appeal from Commonwealth agencies, such as the OOR, does not apply.

#### 2.

Next, we seek guidance from the Freedom of Information Act (FOIA), the federal counterpart to our Law. *See* 5 U.S.C. § 552. The FOIA provides a two-step process for obtaining public records of federal government agencies. Like local and Commonwealth agencies, each federal agency is required to designate a Chief FOIA Officer who is responsible for compliance with the FOIA. 5 U.S.C. § 552(j-*l* ). In the event an agency withholds the records requested, the appropriate district court may order production of records improperly withheld. 5 U.S.C. § 552(a)(4)(B). Upon review, the district court "shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part therefore shall be withheld under any of the [applicable exemptions]. . . ." *Id. See also Vaughn v. Rosen,* 484 F.2d 820, 823 (D.C.Cir.1973) ("when the [g]overnment declines to disclose a document the burden is upon the agency to prove *de novo* in trial court that the information sought fits under one of the exemptions to the FOIA").

#### 3.

We also look for guidance to similar, if not identical, appeal procedures which involve independent review and fact-finding. This Court, in its appellate jurisdiction, conducts fact-finding when reviewing decisions of the Board of Finance and Review (F & R Board). *See* Pa. R.A.P. 1571. There is similarity between the Appellate Rule governing review of F & R Board determinations and the Law's appeal procedures.

Appellate Rule 1571 sets forth the procedures for appellate review. Particularly helpful here are subsections (f) and (h). The F & R Board does not certify a record to the Court. Pa. R.A.P. 1571(f); *Tool Sales & Serv. Co., Inc. v. Commonwealth,* 536 Pa. 10, 637 A.2d 607 (1993). The record is made before the Court by stipulation or evidentiary hearing. *See* Pa. R.A.P. 1542 ("Evidentiary Hearing"); Pa. R.A.P. 1571(f); 20A *West's Pa. Appellate Practice,* § 1571:9 (2008). The stipulations of fact are binding and conclusive on the court; however, we may draw our own legal conclusion from those facts. *Norris v. Commonwealth,* 155 Pa.Cmwlth. 423, 625 A.2d 179 (1993). Thus, this Court functions as a trial court although the matter appears in our appellate jurisdiction. *See* 42 Pa.C.S. § 763 (Direct appeals from government agencies).

■ Notably, when reviewing F & R Board determinations, we are entitled to the broadest scope of review. *Allfirst*

*Bank v. Commonwealth,* 895 A.2d 669 (Pa. Cmwlth.2006), *aff'd,* 593 Pa. 631, 933 A.2d 75 (2007); *Ignatz v. Commonwealth,* 849 A.2d 308 (Pa.Cmwlth.2004); *Norris; PIC-PA Found. For Educ. & Research v. Commonwealth,* 143 Pa.Cmwlth. 291, 598 A.2d 1078 (1991), *aff'd,* 535 Pa. 67, 634 A.2d 187 (1992).[10]

**4.**

■ In light of the foregoing discussion, we conclude that while reviewing this appeal in our appellate jurisdiction, we function as a trial court, and we subject this matter to independent review. We are not limited to the rationale offered in the OOR's written decision. Accordingly, we will enter narrative findings and conclusions based on the evidence as a whole, and we will explain our rationale.

**B.  Scope of Review**

■ For the following reasons, we conclude that a court reviewing an appeal from an OOR hearing officer is entitled to the broadest scope of review.

**1.**

■ The Law designates the record on appeal before a court as the request for public records, the agency's response, the appeal, the hearing transcript, if any, and the final written determination of the appeals officer.  65 P.S. § 67.1303(b).  The Law does not expressly restrain a court from reviewing other material, such as a stipulation of the parties, or an *in camera* review of the documents at issue.  Also, the Law does not prohibit a court's supplementation of the record through hearing or remand.

It is unclear whether the General Assembly intended the Law to limit a reviewing court's scope of review or merely to describe the items which must be certified to a court for review.  Accordingly, we engage in statutory construction.

**2.**

The language of the Law describing the record on appeal before a court predates

10.  Our conclusion is also consistent with other avenues of statutory appeals where a reviewing tribunal on appeal is permitted to take additional evidence and render findings of fact.  *See generally* 75 Pa.C.S. § 1550 (pertaining to judicial review of Department of Transportation decisions affecting operating privileges); *Commonwealth v. Etzel,* 370 Pa. 253, 86 A.2d 64 (1952) (it was incumbent on trial court to make findings of fact from the evidence adduced at hearing and enter order consistent with such findings on appeal from license suspension); Section 1005–A of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended, added by* the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11005–A (court of common pleas may receive additional evidence on appeal from zoning determination); *De Cray v. Zoning Hearing Bd. of Upper Saucon Twp.,* 143 Pa.Cmwlth. 469, 599 A.2d 286 (1991) (trial court required to decide zoning appeal *de novo* where it took additional evidence); *Hastings Indus. v. Workmen's Comp. Appeal Bd. (Hyatt),* 531 Pa. 186, 611 A.2d 1187 (1992) (Workers' Compensation Appeal Board has broad scope of review in disfigurement cases); *W. Pa. Hosp. v. Workers' Comp. Appeal Bd. (Cassidy),* 725 A.2d 1282 (Pa.Cmwlth. 1999) (amendments to Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2807, did not affect Workers' Compensation Appeal Board's scope of review in disfigurement cases); Section 518.2 of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended, added by* the Act of December 13, 1982, P.L. 1160, 72 P.S. § 5020–518.2 (court of common pleas shall determine market value of property subject to tax assessment appeal); *Matter of Harrisburg Park Apartments,* 88 Pa.Cmwlth. 410, 489 A.2d 996 (1985) (trial court is fact-finder in tax assessment appeals and is required to independently determine fair market value of property); *Two Sophia's, Inc., v. Pa. Liquor Control Bd.,* 799 A.2d 917 (Pa.Cmwlth.2002) (trial court is required to receive record below, and together with any other evidence properly submitted, make findings and conclusions).

the current Law. In 2002, the previous version of the Right–to–Know Law was amended to include the provision that the record on appeal to a court shall be "the request, the agency's response, the requester's exceptions, if applicable, the hearing transcript, if any, and the agency's final determination, if applicable." *See* Former Section 4 of the Law, added by the Act of June 29, 2002, P.L. 663, *formerly,* 65 P.S. § 66.4, repealed by the Act of February 14, 2008, P.L. 6.

In deciding the effect of the current language on our scope of review, we may consider appellate decisions made while functionally identical language was in effect. 1 Pa.C.S. § 1921(c)(5) (the intention of the General Assembly may be ascertained by considering, among other matters, the former law, including other statutes on the same subject). In *Nernberg v. City of Dubois,* 950 A.2d 1066 (Pa.Cmwlth. 2008), *appeal denied,* 600 Pa. 772, 968 A.2d 234 (2009), the trial court reviewed an appeal from a deemed denial under the former Right–to–Know Law. The court admitted evidence during a hearing. The evidence was admitted over objection. Ultimately, this Court affirmed, although for reasons unrelated to the enlargement of the record.

Similarly, in *York Newspapers, Inc. v. City of York,* 826 A.2d 41 (Pa.Cmwlth. 2003), the trial court issued an order establishing the procedure whereby the requested records would be searched, conducted a view of the location where the records were stored, permitted the requester to review boxes previously searched, and conducted *in camera* review of documents to which the parties could not agree. This Court affirmed for reasons unrelated to the enlargement of the record. *See also Muir v. Alexander,* 858 A.2d 653 (Pa. Cmwlth.2004) (trial court conducted *in camera* review of settlement agreement between school district and former employee).

Moreover, several recent appellate decisions suggest that a court's *in camera* review of public records sought under the former Right–to–Know Law is permissible. *Tribune–Review Publ'g Co. v. Bodack,* 599 Pa. 256, 961 A.2d 110 (2008) (Saylor, J., concurring) (recognizing availability of *in camera* review in appropriate cases); *Commonwealth ex rel. Dist. Attorney of Blair County,* 823 A.2d 147 (Pa.Super.2003), *aff'd,* 583 Pa. 620, 880 A.2d 568 (2004) (common pleas court reviewed autopsy report *in camera* to determine whether Commonwealth established release of report would hinder homicide investigation); *Parsons v. Pa. Higher Educ. Assistance Agency,* 910 A.2d 177 (Pa. Cmwlth.2006) (Commonwealth Court retained jurisdiction over request to PHEAA for expense vouchers to conduct *in camera* review, if necessary, over redacted information); *Weiss v. Williamsport Area Sch. Dist.,* 872 A.2d 269 (Pa.Cmwlth.2005) (common pleas court reviewed school documents *in camera* to determine whether they were public records). *See also LaValle v. Office of Gen. Counsel,* 564 Pa. 482, 769 A.2d 449 (2001) (sound policy would support availability of *in camera* review by Commonwealth Court where appropriate; case decided before statutory language describing record on appeal). As previously noted, this procedure is consistent with the federal district court's authority to conduct *in camera* review under the FOIA. *See* 5 U.S.C. § 552(b).

In sum, appellate courts deciding cases under the former Right–to–Know Law did not restrict reviewing courts from considering information beyond the record described in the statutory language.

### 3.

We also find guidance in our Supreme Court's decision in *Appeal of Borough of*

*Churchill,* 525 Pa. 80, 575 A.2d 550 (1990), which addressed a court's inherent authority to control matters before it in a statutory appeal. In *Borough of Churchill,* a landowner appealed a board of assessment's determination of the fair market value of property to the court of common pleas. A question arose as to post-trial practice. In particular, confusion arose as to whether the appealable order was the order entered after hearing or the order disposing of post-trial motions.

On landowners' appeal from the order disposing of post-trial motions, this Court quashed the appeal. We reasoned that post-trial practice does not apply to statutory appeals; therefore, the appealable order was the order entered after hearing, not the order disposing of post-trial motions.

On further appeal, the Supreme Court reversed. Of particular note, the Supreme Court agreed with our conclusion the Rules of Civil Procedure do not apply in statutory appeals. But, the Court further stated:

> Since the Rules of Civil Procedure are inapplicable to statutory appeals, rules of practice and procedure [do] not have to be enacted in strict compliance with the provisions of Rule 239 [relating to local rules]. Rather, our trial courts have had the right to enact rules and publish these to cover practice in this area of the law. Where they have not created and published such local rules, then each trial court has been vested with the full authority of the court to make rules of practice for the proper disposition of cases before them and that we have enforced those rules unless they violated the Constitution or laws of the Commonwealth or United States, or our state-wide rules. The general, inherent power of all courts to regulate their own practice, without control, on the ground of expediency, has been recognized by this court for almost one hundred and eighty years ... and we see no reason at this time to disturb that well-settled principle.

*Id.* at 89, 575 A.2d at 554. As the common pleas court in *Borough of Churchill* expressly invited the parties to file exceptions to its decision, and its decision to do so did not violate case law or state-wide rules, the Supreme Court concluded post-trial practice was not prohibited. Thus, the appealable order was the order disposing of post-trial motions.

Our Supreme Court in *Borough of Churchill* held that a court reviewing a decision in a statutory appeal possesses the inherent right to employ rules for procedure and practice before it so long as the rules do not conflict or violate the laws of the Commonwealth or the United States. As discussed above, the current Law does not expressly restrain a court from reviewing other material or prohibit a court's supplementation of the record through hearing or remand. The rationale in *Borough of Churchill* supports a conclusion that, in the absence of a specific restriction, a court deciding a statutory appeal has the inherent authority to take reasonable measures to ensure that a record sufficient for judicial review exists.

**4.**

■ In light of the discussion above, we conclude that Section 1303 of the Law was not intended to restrict a reviewing court's scope of review. Rather, similar to this Court's review of F & R Board decisions, a court is entitled to the broadest scope of review. *Allfirst Bank; Ignatz.* The language in Section 1303 of the Law was intended to describe the record to be certified by the OOR to a reviewing court.

However, the overall statutory scheme of the Law clearly indicates the General

Assembly's intent that issues regarding access to public records be resolved expeditiously and efficiently. This is most evident in Chapters 9 and 11 of the Law, which deal with agency responses to requests and initial appeals of agency determinations. 65 P.S. §§ 67.901–67.1102.

For example, Section 901 of the Law requires that an agency respond to a request within five business days of receipt of the request by the agency's open records officer. 65 P.S. § 67.901. Failure to do so may result in a deemed denial. *Id.* Under certain circumstances, the time to respond may be extended up to 30 additional days. Section 902 of the Law, 65 P.S. § 67.902.

Also, Section 1101 of the Law imposes tight time limits on the time to file an initial appeal to OOR (15 days) and on the time within which an OOR appeals officer shall resolve an initial appeal (30 days). 65 P.S. §§ 67.1101. An appeal is deemed denied where no determination is rendered by the appeals officer within 30 days. *Id.* In the absence of regulation, policy or procedure governing initial appeals, the appeals officer shall rule on procedural matters "on the basis of justice, fairness *and the expeditious resolution of the dispute.*" Section 1102 of the Law, 65 P.S. § 67.1102 (emphasis added).

■ Given this overall scheme, a court reviewing an appeal from the OOR under the Law should consider the manner of proceeding most consistent with justice, fairness and expeditious resolution. For example, should a hearing be necessary for proper review, a court may consider that a hearing before an OOR appeals officer is not attended with the same formality as in court. *See* Section 1102(a)(2) of the Law, 65 P.S. § 67.1102(a)(2) (appeals officer may admit into evidence information believed to be reasonably probative and relevant; appeals officer may limit cumulative evidence).[11] Also, a court should consider that at times requesters will be unrepresented and therefore at a disadvantage in certain court proceedings.

## IV. Merits

### A. Issues

On appeal, Requester assigns error in the OOR's conclusion that PEMA proved it properly withheld the names of recipients of goods and services purchased with Homeland Security grant funds. He also claims the OOR erred by denying access to the records in the medium requested.

### B. Public Records

■ The new Law is significantly different in that the prior version of the Law narrowly defined the term "public record."[12] Under the current Law, however, any record, including financial records of a Commonwealth or local agency, is a public record to the extent the record: is not exempt from disclosure under the Law; is not exempt under Federal or State law, regulation, or judicial order or decree; or, is not protected by privilege. Section 102 of the Law, 65 P.S. § 67.102. In turn, the term "record" is defined as

[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a

---

11. Section 1101(a)(2) of the Law also provides that an appeals officer's decision to hold or not to hold a hearing is not appealable. We construe this provision to be a limitation on a requester's ability to appeal a denial of hearing, not a limitation on the inherent authority of a court to supplement a record so that it is sufficient for review.

12. *See* Former Section 1 of the Law, *formerly,* 66 P.S. § 66.1.

transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

*Id.*

Here, there is no dispute, and we so find, the records at issue are records as defined by the Law. The issue, therefore, is whether the records are "public records" and whether there is a statutory exemption prohibiting their disclosure.

We also find the records requested are public records. Indeed, PEMA does not disagree to the extent it provided information contained within the records Requester sought: the purchase order number; the quantity and types of goods and services purchased; the unit price; the total purchase price; the total of all items on a single purchase order; the date upon which PEMA sent the purchase order to the vendor; and, the vendor. *See* R.R. at 10a–286a.

### C. Statutory Exemption

■■■■ We therefore consider whether Section 708(b)(2) and (3) requires PEMA to withhold the names of the recipients of the goods and services purchased. As the Law is remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions, the exemptions from disclosure must be narrowly construed. *See generally Borough of Youngwood v. Pa. Prevailing Wage Appeals Bd.*, 596 Pa. 603, 947 A.2d 724 (2008) (exemptions to remedial legislation must be construed narrowly); *Lukes v. Dep't of Pub. Welfare*, 976 A.2d 609 (Pa.Cmwlth.2009) (purposes of Law); *see also Judicial Watch, Inc. v. U.S. Dep't*

*of State*, 650 F.Supp.2d 28 (D.D.C.2009) (exemptions from disclosure must be construed in such a way as to provide maximum access consonant with overall purpose of FOIA).

PEMA cited subsections 708(b)(2) and (3)(ii) of the Law, 65 P.S. § 67.708(b)(2) and (3)(ii), to justify redaction of the recipients' names. In their entirety, these subsections provide the following records shall not be accessed by a requester:

(2) A record maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity or a record that is designated by an appropriate Federal or State military authority.

(3) A record, the disclosure of which creates a reasonable likelihood of endangering the safety or the physical security of a building, public utility, resource, infrastructure, facility or information storage system, which may include:

(i) documents or data relating to computer hardware, source files, software and system networks that could jeopardize computer security by exposing a vulnerability in preventing, protecting against, mitigating or responding to a terrorist act;

(ii) lists of infrastructure, resources and significant special events, including those defined by the Federal Government in the National Infrastructure Protections, which are deemed critical due to their nature and which result from risk analysis; threat assessments; consequence assessments; antiterrorism protective measures and plans; counterterrorism measures and plans; and security and response needs assessments; and

(iii) building plans or infrastructure records that expose or create vulnerability through disclosure of the location, configuration or security of critical systems, including public utility systems, structural elements, technology, communication, electrical, fire suppression, ventilation, water, wastewater, sewage and gas systems.

Reviewing the statutory exemption and the public records subject to this appeal, we conclude PEMA erred in part by redacting the names of *all* recipients.

More particularly, a cursory review of the reproduced record indicates some goods and services purchased are not of such significance that knowing their location endangers the public safety or preparedness, or the physical security of a building, public utility, resource, infrastructure, facility or information storage system. 65 P.S. §§ 67.708(b)(2) and (3); *see* R.R. at 10a–284a. By way of example, we fail to see how knowledge of the location of "bungee cords" endangers public safety or security of facilities. *See* R.R. at 11a. The reproduced record is replete with examples of innocuous items the location of which is not vital to local, state, or national public safety, preparedness, or public protection activity.

On the other hand, we agree with PEMA that knowledge of the location of some goods and services may pose a threat to public safety, preparedness and protection activity. For example, PEMA purchased a number of computer servers. R.R. at 3a. Knowledge of the location of servers has the potential to endanger an information storage system. 65 P.S. § 67.708(b)(3). Similarly, knowledge of the location of biochemical testing equipment could indicate a taskforce's ability to effectively respond to a chemical threat. *See* R.R. at 115a.

In other words, PEMA's sweeping redaction of the recipients' names is overbroad. Whether knowledge of the location of a particular item (with its supporting goods and services) is reasonably likely to pose a threat to or endanger public safety cannot be made using a blanket approach. PEMA's method of withholding the recipients' names runs counter to the purposes of the Law. Therefore, PEMA must make a reasonable effort to differentiate between goods and services which are reasonably likely to endanger public safety and those that do not. In the latter instance, PEMA must provide Requester with the names of the recipients of the goods and services purchased with Homeland Security funds.

We are mindful, however, Section 705 of the Law, 65 P.S. § 67.705, specifically provides that an agency is not required to "compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record." Thus, we must leave to the discretion of the agency the manner it chooses to release the names of the recipients of goods and services purchased with Homeland Security funds for fiscal years 2005–2008 which do not pose a threat to public safety or facilities.[13]

---

**13.** For guidance, we refer PEMA to two approaches which the federal courts use when addressing an agency's claim of disclosure exemption under the FOIA. First, the District of Columbia Circuit Court of Appeals established in *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir., 1973), an item-by-item indexing system which correlates to a specific FOIA exemption.

The second approach recognized that a *"Vaughn* index" may not be a practical approach in view of the records requested. In some instances, a satisfactory index could undermine the exemption and, in those cases, agencies may proffer generic determinations for nondisclosure. *Curran v. Dep't of Justice,* 813 F.2d 473 (1st Cir.1987); *see also Crooker*

We appreciate the enormity of the task before PEMA on remand. Nevertheless, the General Assembly's enactment of the new Law evidences its commitment to providing greater access to the Commonwealth's public records. PEMA's redaction of all recipients' names is far too reaching, and the broad redaction fails to consider that the location of all goods and services is not vital to public safety.

Accordingly, we reverse and remand this matter to the OOR with further instructions for remand to PEMA allowing it to refine its redactions consistent with our discussion.[14]

### ORDER

AND NOW, this 5th day of February, 2010, the final determination of the Office of Open Records is **REVERSED and RE-MANDED** for further proceedings before the Pennsylvania Emergency Management Agency consistent with the foregoing opinion.

Jurisdiction relinquished.

v. *Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64 (D.C.Cir.1986). This does not, however, absolve agencies from making a minimally sufficient showing of exemption. *Curran*. Agencies may justify their exemptions on a category-of-document by category-of-document basis. *Id.* The chief characteristic of a category-of-document methodology must be functionality, that is, the classification should be clear enough to permit a court to ascertain "how each … category of docu-

ments, if disclosed, would interfere with [the agency's duty not to disclose exempt public records]." *Id.* at 475.

**14.** Because remand may alter the format in which PEMA provides the public records, we will not consider at this time Requester's argument PEMA violated the Law by failing to produce the public records in the format requested. *See Lake v. City of Phoenix*, 222 Ariz. 547, 218 P.3d 1004 (2009).