IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh,                    :
                    Appellant          :
                                       :
          v.                           :    No. 1194 C.D. 2020
                                       :    Submitted:  February 7, 2022
Ashley Murray and                      :
The Pittsburgh Post Gazette            :
                                       :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                       FILED:  April 12, 2022


          In this Right-to-Know Law[1] (RTKL) appeal, the City of Pittsburgh (City) asks
us to rule that it is exempt from disclosing certain records of email communications
between its officials concerning the planning of two significant summertime events
in 2019: a Fourth of July fireworks show and the City's annual Three Rivers Regatta.
The City contends these records are exempt from disclosure because they are
allegedly inseparable from documents it claims to have already produced to federal
authorities in response to a grand jury subpoena (federal subpoena).  Because the
City failed to make the threshold evidentiary showing required to properly invoke

---

[1] Act of February 14, 2008, P.L. 6, No. 3, § 101, 65 P.S. §§ 67.101-67.3104.

the RTKL's exemption for criminal investigative records, we affirm the October 16, 2020 order of the Allegheny County Court of Common Pleas (trial court) ordering the City to produce the requested records.

## I. BACKGROUND

On August 1, 2019, Appellees Ashley Murray[2] and the Pittsburgh Post-Gazette (Post-Gazette) submitted two RTKL requests (Requests) to the City of Pittsburgh.[3] The Requests sought records of any communications or correspondence containing a series of specified search terms exchanged between 12 named individuals who were involved in planning the City's 2019 Fourth of July and Three Rivers Regatta celebrations. Reproduced Record (R.R.) 119a-122a. Among others, these individuals included the City mayor, the Director of Public Safety, and Derek Weber, the event planner hired by the City to plan the celebrations. R.R. 119a, 063a. The Requests specified the following search terms: "regatta," "regatta board," "regatta permit," "LionHeart," "Derek Weber," "Weber," "Fourth of July," "Fourth of July fireworks," "4th of July," "Point State Park Fireworks," "4th fireworks," and "fireworks permit." R.R. at 119a.

After invoking a statutorily authorized extension of time, *see* Section 902 of the RTKL, 65 P.S. § 67.902, the City denied the Requests via letter dated September 5, 2019. R.R. at 127a. Among other grounds for non-disclosure,[4] the City asserted

---

[2] Ashley Murray is a reporter for the Pittsburgh Post-Gazette. Reproduced Record (R.R.) at 63a.

[3] The Post-Gazette directed one of the Requests to the Mayor's Office and the other to the Department of Public Safety. R.R. at 119a, 121a. Because they do not differ in substance, we refer to them collectively as "Requests."

[4] The City initially relied on three additional grounds for non-disclosure, including two additional RTKL exemptions, Section 708(b)(17) and (b)(10)(i)(A) of the RTKL, 65 P.S. §§ 67.708(b)(17) (records relating to non-criminal investigations), 67.708(b)(10)(i)(A) (records reflecting internal predecisional deliberations of an agency), and the Criminal History Record

the records encompassed by the Requests (Responsive Records) were exempt from disclosure pursuant to Section 708(b)(16) of the RTKL, 65 P.S. § 67.708(b)(16), which provides that "record[s] of an agency relating to or resulting in a criminal investigation" are not subject to the RTKL's disclosure mandate (Criminal Investigations Exemption). The City's denial letter was summary in form; it did not explain how the Criminal Investigations Exemption applied to any of the Responsive Records. R.R. at 127a.

On September 23, 2019, the Post-Gazette filed a timely appeal to the Pennsylvania Office of Open Records (OOR).[5] R.R. at 12a-13a. In support of their respective positions, the parties submitted legal briefs and certain documentary evidence to OOR. R.R. at 14a-16a; R.R. 52a-68a. The City's evidence included an affidavit from Wendell Hissrich, Director of Public Safety for the City of Pittsburgh (Director Hissrich). R.R. at 59a-62a. Therein, Director Hissrich stated his "professional opinion … based on over 25 years in law enforcement" that the Responsive Records related to "two active ongoing criminal investigations" into the

_____

Information Act, 18 Pa.C.S. § 9106(c)(4) ("CHRIA"). At various points in the proceedings below, the City intentionally waived each of these arguments. First, the City waived its argument under the predecisional deliberations exemption by failing to present this argument in its appeal to the trial court. R.R. at 106a-07a; *Doe-Spun, Inc. v. Morgan*, 502 A.2d 287, 289 (Pa. Cmwlth. 1985) ("[a] judgment or decree will not be reversed on a theory that was not presented to the trial court"). Subsequently, at the July 27, 2020 evidentiary hearing, the City intentionally waived all other arguments except for reliance upon the criminal investigations exemption contained in Section 708(b)(16) of the RTKL, 65 P.S. § 67.708(b)(16) (Criminal Investigations Exemption). *See* R.R. at 269a-70a (colloquy between counsel for the City and Judge O'Brien indicating City's abandonment of all arguments except exemption "under [Section] 708 subsection (b)(16)"). In view of the City's intentional abandonment of all arguments for nondisclosure apart from reliance on the Criminal Investigations Exemption, this Court will not consider the City's argument that the Responsive Records are protected from disclosure by CHRIA or any other source of law.

[5] The OOR is a Commonwealth agency within the Department of Community and Economic Development that, among other functions, hears appeals from RTKL decisions of state and local agencies. Section 1310(a)(5) of the RTKL, 65 P.S. § 67.1310(a)(5); *see also Bowling v. Off. of Open Recs.*, 75 A.3d 453, 457 (Pa. 2013) (discussing various functions of OOR).

circumstances surrounding the cancellation of the 2019 Three Rivers Regatta. R.R. at 61a-62a. Director Hissrich did not state that he had personally reviewed documents responsive to the Requests to determine their potential impact on the open criminal investigations.

After reviewing the parties' submissions, OOR ordered the City to produce an index of each record responsive to the Requests (exemption log) to facilitate its determination of whether the Criminal Investigations Exemption could apply. R.R. at 79a. The OOR noted that the City "ha[d] not provided any evidence as to *which* records [were] responsive to" the Requests, and that in the absence of a "description of the responsive records," it would be impossible to "adjudicate the applicability of any RTKL exemption." *Id.* (emphasis in original).

In a letter dated January 3, 2019, the City refused to produce an exemption log. R.R. at 85a. Therein, the City explained it had received the federal subpoena, which allegedly sought "nearly the same records" as those sought by the Requests. R.R. at 087a. According to the City, this contention, standing alone, rendered an exemption log unnecessary and potentially illegal. R.R. at 86a. The City also claimed that submission of such a log to a publicly accessible record before the OOR would violate "[t]he secrecy of the grand jury proceedings." *Id.*

On January 30, 2020, OOR issued a memorandum opinion granting the Post-Gazette's appeal and ordering production of the Responsive Records. R.R. at 92a-102a. As relevant here, OOR held that the City failed to produce evidence sufficient to properly invoke the Criminal Investigations Exemption. R.R. at 117a. OOR held it was the City's burden to "provide some evidence showing how the records relate to a specific criminal investigation." R.R. at 114a (citation omitted). OOR determined that, as the sole piece of evidence proffered to carry this burden, Director

4

Hissrich's affidavit failed to "connect the nature of the various records to the reasonable likelihood that disclosing them would violate an exemption." *Id.* (citing *Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 375-76 (Pa. Cmwlth. 2013)). Ultimately, OOR held it was "impossible to determine whether the criminal investigative exemption applies to the records at issue… [w]ithout some description of the responsive records." R.R. at 117a.

The City then filed an appeal to the trial court. R.R. at 103a-107a; *see also* Section 1302 of the RTKL, 65 P.S. § 67.1302. On May 28, 2020, the trial court ordered the City to produce all documents responsive to the Requests for in camera review by July 9, 2020, and to categorize these documents "by the rationale for denial" of disclosure. R.R. at 193a. The court also ordered the City to provide a copy of the federal subpoena, which allegedly supported its reliance on the Criminal Investigations Exemption.[6] *Id.* In the same filing, the court also scheduled an evidentiary hearing for July 23, 2020. R.R. at 194a.

In subsequent email correspondence to the trial court, counsel for the City initially indicated she was in the process of compiling records for in camera review and hoped to produce them by July 15. R.R. at 254-55a. Ultimately, however, the City did not produce the records, choosing instead to argue that the overlap between the language of the Requests and the federal subpoena was itself sufficient to trigger the Criminal Investigations Exemption. R.R. at 262a-73a (colloquy between trial court and counsel for the City).[7] The City did, however, provide a copy of the federal

---

[6] The Post-Gazette also filed a motion seeking "attorneys'-eyes-only" access to the records or, at a minimum, an exemption log from the City, so it could prepare an adequate response to the City's claim of exemption. R.R. at 195a.

[7] In their briefs, both parties refer to off-the-record conversations regarding the City's motive for refusing to produce the records for in camera review. *See* Appellant's Br. at 9 n.3; Appellees' Br. at 7. This Court, however, cannot rely upon evidence not contained in the record

subpoena prior to the hearing. R.R. 536a-38a. The relevant language of the federal subpoena reads as follows:

> Please provide all documents relating, in any way, to the Three Rivers Regatta, Derek Weber and/or Lionheart Event Group from January 2016 to the present. Your response should include, but is not limited to, emails, faxes, text messages, correspondence, contracts, invoices, receipts and checks.

R.R. at 538a.

The City only presented the testimony of one witness, Director Hissrich, at the evidentiary hearing. On direct examination, his testimony largely echoed the contents of his earlier affidavit: he described his many years of experience with the Federal Bureau of Investigation and other law enforcement entities and stated that, based on that experience, it was his professional opinion that the authorities who issued the federal subpoena would likely be interested in the correspondence covered by the Requests. R.R. at 278a-81a, 290a. On cross-examination, Director Hissrich revealed that he had never reviewed *any* documents responsive to the Requests, nor did he know whether the documents were even compiled by the City. R.R. at 295a-97a. Specifically, Director Hissrich testified as follows:

> Q: Did you review all of the records responsive to the two… Requests before signing your affidavit in October of 2019?
> A: No.
> . . . .
> Q: [Did] you review any documents by the City in response to these … [R]equests?
> A: Probably not.
> . . . .
> Q: Do you know whether the City ever gathered in one place all the responses to these… [R]equests?
> A: I don't have that knowledge.

---

before the trial court. *Twp. of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 472 (Pa. Cmwlth. 2018) (refusing to consider extra-record evidence in spite of parties' stipulation).

. . . .

Q: Prior to today's hearing did you review any documents specifically gathered in response to the . . . [R]equests?

A: No.

R.R. at 295a-97a. Director Hissrich also testified that, while he had been involved in gathering some documents from the Public Safety Department to respond to the federal subpoena, he had not reviewed the entirety of those documents, nor had he reviewed any other documents responsive to the subpoena gathered by City departments outside of his own department. R.R. at 298a-301a, 304a.[8]

On October 16, 2020, the trial court issued an opinion affirming OOR's decision to order production of the Responsive Records. R.R. at 461a-64a. As pertinent here, the court found that "the City [did] not submit . . . into evidence any documents gathered in response to either the Requests or the [federal subpoena], or any testimony regarding which precise documents either of those sets of documents actually contained." Exhibit A to Appellees' Br. at 8, ¶ 39.[9] Based on that dearth of evidence, the City was "limited to the argument that the requested documents are exempt under [the Criminal Investigations Exemption] based solely on the similarity

---

[8] Approximately 30 minutes before the hearing began on July 27, 2020, counsel for the City emailed an affidavit from Christine Rice, IT Support Manager for the City's Department of Innovation and Performance, to the trial court and counsel for Appellees. *See* R.R. at 530a-33a (affidavit), 308a, 447a (time of transmission). While the trial court ultimately admitted the affidavit "provisionally," subject to a later motion to strike by Appellees, *see* R.R. at 312a, the document has no bearing on our disposition of this case. Therein, the affiant simply describes the computer-based search that was performed in response to the Requests—she does not aver that she personally reviewed any responsive documents, nor does she make any averments regarding their content. R.R. at 329a-30a.

[9] The trial court's opinion expressly adopted a number of findings of fact and conclusions of law submitted by Appellees in their post-hearing briefing. R.R. at 462a-63a. Appellees included as "Exhibit A" to their brief a copy of their Proposed Findings of Fact and Conclusions of Law appropriately redacting those portions of the document that were not adopted by the trial court.

between the language of the [federal subpoena] and the Requests." *Id.* ¶ 40. In the end, the trial court held there was

> no evidentiary basis for application of [the Criminal Investigations Exemption] . . . because the City (a) never submitted the records for in camera review, (b) did not offer anyone to testify as to the records' contents, (c) did not offer any evidence regarding their contents, and (d) did not offer evidence that anyone from the City ever reviewed the documents.

*Id.* at 15, ¶ 26.

On November 13, 2020, the City filed a timely appeal to this Court.

## II. SCOPE AND STANDARD OF REVIEW

On appeal from a lower court's decision regarding a RTKL request directed to a local government agency, this Court conducts a *de novo* review of the lower court's legal conclusions and determines whether its findings of fact "are supported by competent evidence." *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1213 n.6 (Pa. Cmwlth. 2011) (citation omitted). "Our scope of review under the RTKL is plenary." *Allegheny Cnty. Dep't of Admin. Servs. v. Parsons*, 61 A.3d 336, 342 (Pa. Cmwlth. 2013) (citation omitted).

## III. ISSUES PRESENTED

The only properly preserved argument presented by the City on appeal is that the Responsive Records are exempt from disclosure based on the Criminal Investigations Exemption. More specifically, the City claims that substantial overlap between the language of the Requests and the language of the federal subpoena shows that records responsive to the former "relat[e] to . . . a criminal investigation." 65 P.S. § 67.708(b)(16). In response, the Post-Gazette contends this exemption cannot apply in this case because the relevant criminal investigation is being conducted by *federal* authorities—in its view, the Criminal Investigations

Exemption can *only* apply to investigations being carried out by the agency to which a RTKL request is addressed. Appellees' Br. at 14.

Because the City has failed to introduce sufficient evidence to properly invoke the Criminal Investigations Exemption in the first instance, we need not address the appropriate reach of Section 708(b)(16) where federal criminal investigations are concerned. We will, however, expound upon the minimum evidentiary threshold set by our precedents for the government's invocation of an exception to the RTKL's broad mandate of public access to government documents.

## IV. DISCUSSION

### A. The Government's Burden in Establishing an Exemption to the RTKL's Mandate of Public Access

Enacted in 2008, the current RTKL is built around a strong policy favoring public access to government documents. The RTKL creates a categorical presumption that every record generated by a state or local government entity anywhere in the Commonwealth can be accessed by members of the public upon request. Section 305(a) of the RTKL, 65 P.S. § 67.305(a). Pennsylvania courts have recognized that this presumption of open access serves the "goal[s] of promoting government transparency" and accountability for public officials. *Easton Area Sch. Dist. v. Miller*, 232 A.3d 716, 724 (Pa. 2020) (quoting *Pa. State Police v. Grove*, 161 A.3d 877, 892 (Pa. 2017)); *see also Bowling v. Off. of Open Recs.*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010), *aff'd*, 75 A.3d 453 (Pa. 2013).

While all government records are presumed public under the RTKL, the law also creates a series of exceptions to its broad mandate of disclosure. 65 P.S. § 67.708(b) (listing exemptions). Courts are required to construe these exemptions narrowly. *Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 180 (Pa. Cmwlth. 2019). If the government seeks to resist disclosure by relying on an exemption, it

9

bears the burden of proving the exemption's applicability "by a preponderance of the evidence." Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1).

Past cases of this Court have detailed several ways the government may carry its burden to establish an exemption under the RTKL.[10] One common method is the preparation of "an item-by-item index . . . which correlates to . . . specific [RTKL] exemption[s]." *Bowling*, 990 A.2d at 825 n.13. Thus, agencies may submit a document resembling a "privilege log" which itemizes the various records responsive to a RTKL request while tying each record or group of records to a specific exemption under the RTKL. *McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014). Such a log "typically lists the date, record type, author, recipients, and [provides] a description of the withheld record." *Id.* (citation omitted).[11]

This Court has recognized situations exist wherein the very production of an index or exemption log will itself compromise legitimately withheld material. In *Bowling*, we stated that "[i]n some instances, a satisfactory index could undermine the exemption and, in those cases, agencies may proffer generic determinations for nondisclosure." 990 A.2d at 825 n.13 (citing *Curran v. Dep't of Justice*, 813 F.2d 473 (1st Cir. 1987)). Crucially, however, this principle "does not . . . absolve

---

[10] The discussion that follows is not intended as an exhaustive account of *every* possible means by which the government may establish an exemption under the RTKL. Rather, it is simply a survey of some of the primary means of proof authorized by prior decisions of this Court. Different forms of proof may be necessitated by the unique circumstances of any given case.

[11] Some decisions of this Court have referred to an index of this nature as a "*Vaughn* index," a term that refers to the United States Court of Appeals for the District of Columbia Circuit's opinion in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). *See, e.g.*, *Off. of Governor v. Scolforo*, 65 A.3d 1095, 1103 n.13 (Pa. Cmwlth. 2013); *Bowling*, 990 A.2d at 825 n.13. There, the D.C. Circuit discussed the utility of itemized indexes to satisfy the government's burden in proving an exemption to the Freedom of Information Act, 5 U.S.C. § 552 (FOIA), which is the federal forerunner to Pennsylvania's RTKL. *See Scolforo*, 65 A.3d at 1103 (recognizing FOIA as "the federal counterpart to Pennsylvania's RTKL").

agencies from making a minimally sufficient showing of exemption." *Id.* Governments that refuse to produce an exemption log are still required to describe withheld documents by category and state with particularity why a claimed exemption applies to each category. *Id.* In other words, the government's "classification should be clear enough to permit a court to ascertain how each category of documents, if disclosed, would interfere with the agency's duty not to disclose exempt public records." *Id.* (cleaned up).

To make this showing, an agency may submit an affidavit from a government official who is familiar with the responsive records and who is capable of explaining the grounds for an exemption. *See Off. of Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017). Such an affidavit, however, must contain more than a generic assertion of the exemption or a recitation of the affiant's expertise. *Off. of Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) ("[t]he affidavits must be detailed, nonconclusory, and submitted in good faith") (quoting *Manchester v. U.S. Drug Enf't Admin.*, 823 F. Supp. 1259, 1265 (E.D. Pa. 1993)); *see also Pa. Dep't of Educ. v. Bagwell*, 131 A.3d 638, 658 (Pa. Cmwlth. 2015) ("affidavits that are conclusory or merely parrot the exemption do not suffice"). Instead, it must include as specific a description of the responsive records as can be provided without foregoing the claimed exemption, and it must draw a logical connection between the nature of the records and the substance of the exemption. *Cf. Bowling*, 990 A.2d at 825 n.13 (government is required to explain "how each category of documents, if disclosed, would interfere with the agency's duty not to disclose exempt public

records"). A "conclusory and vague" affidavit will not satisfy this rule. *Bagwell*, 131 A.3d at 658.[12]

These rules represent more than procedural niceties. Adherence to them is essential to fair treatment of requesting parties in a context where the government usually holds all the cards. As the D.C. Circuit recognized in *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), when the government asserts an exemption to a disclosure mandate, the requesting citizen is "comparatively helpless" to counter this assertion without any knowledge of the actual content of the requested records. If the government is permitted to rely on "conclusory and generalized allegations of exemptions," the burden of proof is effectively shifted to the requester, who then must concoct whatever desperate arguments for disclosure he can without any concrete understanding of the requested material, which remains in the government's custody. *Id.* at 826-28. Given that the RTKL places the burden of proving an exemption squarely on the government agency resisting disclosure, this outcome is untenable. 65 P.S. § 67.708(a).

The City relied primarily on the testimony of Director Hissrich to support its claim that the Responsive Records were exempt from disclosure under the Criminal Investigations Exemption. As noted above, Director Hissrich explained he had many years of experience with federal criminal investigations, having worked for the Federal Bureau of Investigation (FBI) and other law enforcement agencies for over 25 years. R.R. at 278a-80a. He also noted he was aware of a then-ongoing federal criminal investigation into the circumstances surrounding the cancellation of

---

[12] The government can also carry its burden of establishing a RTKL exemption by submitting the responsive records to the reviewing tribunal—either OOR or a court of common pleas—for in camera review. *Off. of Governor v. Davis*, 122 A.3d 1185, 1194 (Pa. Cmwlth. 2015). In this case, the trial court asked the City to submit documents responsive to the Requests for in camera review, but the City refused. R.R. at 193a.

the 2019 Three Rivers Regatta.  R.R. at 282a.[13]  Based on his experience with FBI investigations, Director Hissrich testified that the individuals named in the Requests would likely be targeted for interviews and other investigation by federal authorities. R.R. at 290a.  Specifically, Director Hissrich testified as follows:

> Q: So all of these people [named in the Requests] and all of their communications could be related to potential fraud from the year that the Regatta was canceled due to the lack of insurance?
> . . . .
> A: Yes . . . I mean with my experience as an FBI agent, I mean this is a very comprehensive, very complex investigation.  I would say that every angle would be covered by the FBI on this.  I feel that, you know, in the investigations that I completed, that all of those individuals would be witnesses and be interviewed by the FBI.

R.R. 286a-87a, 290a.  In the course of cross examination, Director Hissrich revealed he never personally reviewed *any* records responsive to the Requests.  R.R. at 295a-97a.  He also admitted that, apart from incidentally viewing some documents from the Public Safety Department, he had not reviewed any material submitted to federal authorities in response to the federal subpoena.  R.R. at 298a-301a, 304a.[14]

Because Director Hissrich did not know the contents of the Responsive Records, he simply could not conclude they are exempt from disclosure.  Even on its face, the "conclusion" of his testimony is speculative: when asked whether the communications sought by the Requests "***could be related*** to potential fraud," he responded that, in a hypothetical investigation resembling "the investigations [he] completed" while working for the FBI, "those individuals ***would be*** witnesses and

---

[13] By his own admission, Director Hissrich's knowledge of the scope and progress of the federal investigation was extremely limited.  He merely knew of its existence, the fact that it was ongoing, and that the federal subpoena had been issued to the City.  R.R. at 282a.

[14] Director Hissrich was also unable to confirm whether the City ever compiled all documents responsive to the Requests in one place, or whether it had actually produced *any* documents in response to the federal subpoena.  R.R. at 294a-95a, 301a.

[would] be interviewed." R.R. 286a-87a, 290a (italics and bold text added). An affidavit or testimony offered in support of a claimed exemption must be specific enough to permit OOR or a reviewing court to evaluate how the exemptions apply to *particular documents*. *Cf. Scolforo*, 65 A.3d at 1104 (deeming affidavit insufficient to support exemption where affidavit merely contained "a list of subjects to which [the government's claimed exemption] *may have* related") (italics and bold text added). Given his admitted lack of personal knowledge concerning the contents or nature of the Responsive Records, Director Hissrich's testimony falls far short of meeting this burden. *See id.* ("While the Affidavit tracks the language of the exception[,] it presupposes, rather than proves with sufficient detail," that an exemption applies). As such, the trial court correctly held that "no evidentiary basis" existed to apply the Criminal Investigations Exemption to the Post-Gazette's Requests. Ex. A to Appellees' Br. at 15, ¶ 26.

## V. CONCLUSION

Based on the City's failure to adduce evidence sufficient to support its claim that the records requested by Appellees were exempt from disclosure under the RTKL, we affirm the trial court's order of October 16, 2020, ordering production of the Requested Records.

_____
STACY WALLACE, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh,                          :
                    Appellant                :
                                             :
            v.                               :      No.  1194 C.D. 2020
                                             :
Ashley Murray and                            :
The Pittsburgh Post Gazette                  :


**O R D E R**


**AND NOW**, this 12th day of April 2022, the October 16, 2020, Order of the

Court of Common Pleas of Allegheny County is hereby AFFIRMED.



_____
STACY WALLACE, Judge