# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Office of General Counsel,      :
               Petitioner    :
                               :
        v.                   :    No. 1764 C.D. 2019
                               :    Argued: December 8, 2020
Brad Bumsted and LNP Media    :
Group, Inc.,                       :
             Respondents    :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE P. KEVIN BROBSON, Judge[1]
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge


**OPINION BY JUDGE BROBSON**            **FILED: February 23, 2021**


Office of General Counsel (OGC) petitions for review of a final determination (Final Determination) of the Pennsylvania Office of Open Records (OOR), dated November 20, 2019, which granted, in part, and denied, in part, an appeal filed by Paula Knudsen (Knudsen) and LNP Media Group, Inc. (LNP) under the Right-to-Know Law (RTKL).[2,3] OOR granted Requesters' appeal because the requested records were not from individuals seeking employment with an agency or

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-.3104.

[3] LNP and Knudsen initiated the subject RTKL request and the appeal to OOR. Thereafter, they filed an application to substitute Brad Bumsted (Bumsted), a current employee of LNP, for Knudsen as a respondent in this case due to Knudsen's departure from her employment with LNP. By order dated September 23, 2020, we granted the application and amended the caption of this matter. The reference to "Requesters" herein collectively refers to LNP and either Knudsen or Bumsted, depending on the time period.

predecisional deliberations that are exempt from public access under the RTKL. For the reasons that follow we affirm, in part, vacate, in part, and remand the matter for further proceedings.

## I. BACKGROUND

On October 10, 2019, Requesters filed a RTKL request with OGC, seeking any "[a]pplications submitted to OGC for one vacancy on the Commonwealth Court," noting that the applications were due on October 9, 2019, at 5:00 p.m.[4] (Reproduced Record (R.R.) at 4a.) On October 17, 2019, OGC denied the request, claiming the "applications and related information of applicants not hired by an agency are exempt from access" pursuant to Section 708(b)(7)(iv) of the RTKL, 65 P.S. § 67.708(b)(7)(iv). (R.R. at 5a.) OGC also stated that it "has not provided records that would reveal the internal, predecisional deliberations of an agency, its officials or employees, or records used in such deliberations," citing Section 708(b)(10) of the RTKL, 65 P.S. § 67.708(b)(10). Finally, OGC maintained that "records or portions of the requested records are protected by the attorney-client or attorney-work product privileges," citing Section 102 of the RTKL, 65 P.S. § 67.102. Requesters appealed OGC's refusal to OOR that same day. (R.R. at 1a-3a.)

---

[4] In Pennsylvania, when a judicial vacancy occurs on the Commonwealth Court in the middle of a term, the Governor is empowered to appoint an individual as judge with the advice and consent of two-thirds of the members elected to the Senate. Pa. Const. art. V, § 13(b). After the Governor's appointment and the Senate's confirmation, the judge "serve[s] for a term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs or for the remainder of the unexpired term whichever is less." *Id.* On November 19, 2019, Governor Tom Wolf nominated J. Andrew Crompton for the Commonwealth Court seat made vacant by the retirement of the Honorable Robert Simpson, and the Senate confirmed the appointment on December 18, 2019. OGC represents that on that same day, it provided Requesters with a copy of the redacted application of the Honorable J. Andrew Crompton. (OGC's Brief at 6.)

OGC, in response to the appeal, provided a position statement supporting the denial along with an affidavit from OGC's Communications Coordinator, Alexis Dinniman, dated October 29, 2019 (Dinniman Affidavit).[5] (R.R. at 16a.) Ms. Dinniman attested in her affidavit:

> 5. The responsive records consist of applications submitted by individuals who seek appointment to a vacancy on Pennsylvania's Commonwealth Court. The applications are used by [OGC] and its designees to make recommendations regarding the filling of such vacancy[] and to assist the Office of Governor in [its] deliberations regarding such appointment.
>
> 6. These applications remain internal to [OGC] and its designees[] and are not provided to unrelated third parties.

(*Id.*)

On November 20, 2019, OOR granted Requesters' appeal, in part, and denied it, in part. (Final Determination at 1.) OOR concluded that, because OGC failed to demonstrate the applications were records of individuals seeking employment with an agency, the exemption provided by Section 708(b)(7)(iv) of the RTKL did not apply. (Final Determination at 4-7.) OOR also concluded that, because OGC failed to demonstrate that the applications reflected internal predecisional deliberations, the exemption provided by Section 708(b)(10)(i)(A) of the RTKL also did not apply. (Final Determination at 7-10.) OOR directed OGC to provide Requesters with the responsive applications, but it authorized OGC to redact personal identification information.[6] (Final Determination at 10.) This appeal followed.

---

[5] OGC raised the attorney-client and attorney-work product privileges in its response to the RTKL request but did not address either privilege in the OOR appeal or the appeal before this Court. Accordingly, we deem OGC's claims that the requested records are protected by either or both privileges waived, and the argument will not be considered in this opinion.

[6] It appears that this authorization to allow OGC to redact personal identification information is the extent to which OOR denied Requesters' appeal. As background, OGC

## II. ISSUES

On appeal,[7] OGC argues that OOR erred when it concluded that the applications were not records of individuals seeking employment with an agency subject to the employment application exemption set forth in Section 708(b)(7)(iv) of the RTKL. OGC also argues that OOR erred when it concluded that applications were not protected by the deliberative process exemption provided by Section 708(b)(10) of the RTKL.

## III. DISCUSSION

"The enactment of the RTKL in 2008 was a dramatic expansion of the public's access to government documents" and the "objective of the RTKL 'is to empower citizens by affording them access to information concerning the activities of their government.'" *Levy v. Senate of Pa.*, 65 A.3d 361, 381 (Pa. 2013) (quoting *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012)). "[C]ourts should liberally construe the RTKL to effectuate its purpose of promoting 'access to official government information in order to prohibit secrets, scrutinize actions of public

---

requested in its position statement to OOR that if OOR reversed any portions of its response to the RTKL request, thereby requiring the production of responsive documents, OOR should direct that e-mail addresses, personal financial information, and telephone numbers or personal information of individuals be redacted pursuant to Section 708(b)(6) of the RTKL, 65 P.S. § 67.708(b)(6). (*See* Final Determination at 10.) Section 708(b)(6) of the RTKL exempts personal identification information from disclosure, including "a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number[,]" "[a] spouse's name, marital status or beneficiary or dependent information." 65 P.S. § 67.708(b)(6)(i)(A), (B). Requesters have informed the Court that they do not object to the redaction of personal identification information in the applications should OGC be ordered to produce them. (Requesters' Brief at 24.)

[7] On appeal from OOR in RTKL cases, this Court's standard of review is *de novo*, and our scope of review is plenary. *Bowling v. Off. of Open Recs.*, 990 A.2d 813 (Pa. Cmwlth. 2010), *aff'd*, 75 A.3d 453, 477 (Pa. 2013).

officials, and make public officials accountable for their actions.'" *Id.* (quoting *Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1034 (Pa. Cmwlth. 2011)). Generally, the RTKL requires state and local agencies to provide access to public records that are within their possession upon request.[8] Furthermore, Section 305 of the RTKL, 65 P.S. § 67.305, makes clear that the presumption that a record within an agency's possession is a public record does not apply if it is proven that "(1) the record is exempt under Section 708 [of the RTKL]; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree." Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1), requires the agency that is receiving the RTKL request to bear the burden to prove, by a preponderance of the evidence, that the requested record is exempt from public access.[9]

### A. Exemption Under Section 708(b)(7)(iv) of the RTKL

We first address whether OOR erred in concluding that the requested records were not exempt from disclosure under Section 708(b)(7)(iv) of the RTKL. Section 708(b)(7) of the RTKL generally exempts from access by a requester certain "records relating to an agency employee." Subsection (iv) of Section 708(b)(7) of the RTKL specifically exempts "[t]he employment application of an individual who is not hired by the agency." OGC argues that Section 708(b)(7)(iv) exempts the requested records—*i.e.*, applications of individuals who sought but did not receive an appointment to fill the vacant elected office of a commissioned Commonwealth

---

[8] *See* Sections 301 and 302 of the RTKL, 65 P.S. §§ 67.301 and .302.

[9] "A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to a more likely than not inquiry." *Delaware Cnty. v. Schaefer ex rel. Phila. Inquirer*, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012) (*en banc*) (citing *Jaeger v. Bureau of Workers' Comp. Fee Rev. Hearing Off. (Am. Cas. of Reading c/o CNA)*, 24 A.3d 1097, 1101 n.10 (Pa. Cmwlth. 2011)).

5

Court judge—from access, because it exempts applications of individuals who are "not hired by an agency."

OGC, in support of its position, notes that Section 708(b)(7)(i) of the RTKL, 65 P.S. § 67.708(b)(7)(i), exempts from disclosure a "letter of reference or recommendation pertaining to the character or qualifications of an identifiable individual, *unless it was prepared in relation to the appointment of an individual to fill a vacancy in an elected office* or an appointed office requiring Senate confirmation." (Emphasis added.) OGC seems to suggest that Section 708(b)(7)(i)'s express exception to the exemption for letters of reference or recommendations related to appointments to fill a vacancy in an elected office constitutes a tacit acknowledgment that materials relating to appointments generally are protected under Section 708(b)(7) of the RTKL, 65 P.S. § 67.708(b)(7). OGC reasons that, if vacancy appointment applications are not among the types of material protected, then there would have been no need for the General Assembly to except letters of reference or recommendation for vacancy appointments from the general exemption.

Requesters counter that Section 708(b)(7)(iv) of the RTKL is not applicable to the request at issue, because Commonwealth Court judges are not "agency employees" within the limited meaning of the RTKL and, therefore, applications for appointment to the Commonwealth Court are not exempt from disclosure under the RTKL's employment application exemption in Section 708(b)(7)(iv). Requesters argue that the exception to the exemption is a reference to "public officials," not "agency employees," and that OGC's interpretation directly conflicts with the threshold qualification of Section 708(b)(7) of the RTKL that expressly provides that the record exemptions only apply to agency employees. Requesters' argument

6

relies upon a distinction for RTKL purposes between prospective "agency employees" and prospective "appointees for public office positions," such as Commonwealth Court judgeships.[10]

Requesters, in addition to their statutory construction argument, advance a policy argument as to why the requested records should not be exempt from access, emphasizing that the RTKL is "remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *See Bowling*, 990 A.2d at 824. Accordingly, "exemptions from disclosure must be narrowly construed." *Id.* Requesters maintain that, "[j]ust as the public would have access to the full list of candidates who appear on the ballot were the Commonwealth Court position to be filled through the electoral process, the public is entitled to know who sought consideration for the vacant seat that was filled by gubernatorial appointment." (Requesters' Brief at 9.)

When interpreting a statute, this Court is guided by the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. §§ 1501-1991, which provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." *Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004). "When the words of a

---

[10] Section 708(b)(7) of the RTKL, in addition to the exemptions set forth in Section 708(b)(7)(i) and (iv), also exempts the following records relating to an agency employee: (1) a performance rating or review; (2) the result of a civil service or similar test administered by a Commonwealth agency, legislative agency, or judicial agency; (3) workplace support services program information; (4) written criticisms of an employee; (5) grievance material, including documents related to discrimination or sexual harassment; (6) information regarding discipline, demotion, or discharge contained in a personnel file (but not the final action of an agency that results in demotion or discharge); and (7) an academic transcript.

statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). Only "[w]hen the words of the statute are not explicit" may this Court resort to statutory construction. 1 Pa. C.S. § 1921(c). "A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations." *Bethenergy Mines Inc. v. Dep't of Env't Prot.*, 676 A.2d 711, 715 (Pa. Cmwlth.), *appeal denied*, 685 A.2d 547 (Pa. 1996). Moreover, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. § 1921(a). It is presumed "[t]hat the General Assembly intends the entire statute to be effective and certain." 1 Pa. C.S. § 1922(2). Thus, no provision of a statute shall be "reduced to mere surplusage." *Walker*, 842 A.2d at 400 (citing 1 Pa. C.S. § 1921(a)). Finally, it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. C.S. § 1922(1).

We begin by examining the plain language of the RTKL to determine whether the General Assembly's intent as to the exemption set forth in Section 708(b)(7)(iv) is clear or whether the statute is ambiguous, the latter of which would require the Court to apply the tools of statutory construction. Whether the exemption under Section 708(b)(7)(iv) applies to the requested records is dependent upon whether an individual appointed to fill a vacancy in an elected judicial office may be considered an "agency employee" or to have been "hired by the agency," such that individuals who applied for the judicial appointment but did not receive it are "individuals not hired by the agency," thereby protecting their applications from access by the public.

Section 102 of the RTKL does not define the term "agency employee," but it provides multiple definitions involving the word "agency." Section 102 defines an "agency" as "[a] Commonwealth agency, a local agency, a judicial agency or a

8

legislative agency." 65 P.S. § 67.102. It further defines a "Commonwealth agency" as:

> (1) Any office, department, authority, board, multistate agency or commission of the executive branch, an independent agency and a State-affiliated entity. The term includes:
>
>> (i) The Governor's Office.
>>
>> (ii) The Office of Attorney General, the Department of the Auditor General and the Treasury Department.
>>
>> (iii) An organization established by the Constitution of Pennsylvania, a statute or an executive order which performs or is intended to perform an essential governmental function.
>
> (2) The term does not include a judicial or legislative agency.

*Id.* It defines a "judicial agency" as "[a] court of the Commonwealth or any other entity or office of the unified judicial system" and defines a "legislative agency," in pertinent part, as including the House of Representatives and the Senate. *Id.* The General Assembly, however, did not define the terms "agency employee," "employee," "appointee," or "appointment" in the RTKL.[11] *See id.*

Our review of the plain language of Section 708(b)(7)(iv) of the RTKL leads us to conclude that the statute is ambiguous, because its language is subject to two or more reasonable interpretations. Section 708(b)(7) generally addresses exemptions for "agency employees," and one could reasonably assert that a judicial appointee is not an "agency employee" under the RTKL, such that the exemptions in Section 708(b)(7), including that in subparagraph (iv) for employment applications of individuals *not hired by the agency*, do not apply to the requested records. Nevertheless, because subparagraph (i) of Section 708(b)(7) specifically carves out an exception to the exemption for letters of reference or recommendations

---

[11] These terms are also not defined in the Statutory Construction Act. *See* 1 Pa. C.S. § 1991.

9

prepared in relation to the *appointment* of an individual to fill a vacant elected office, one could also reasonably conclude that appointed individuals necessarily are encompassed within the term "agency employee." Thus, application of statutory construction principles is appropriate and necessary, given that more than one reasonable interpretation of Section 708(b)(7)(iv) exists.

When the words and phrases of a statute are not defined by the statute, Section 1903(a) of the Statutory Construction Act provides that we shall construe the words and phrases "according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa. C.S. § 1903(a). We must consider, therefore, the common approved usage of "employee," "appointee," and "appointment."

An "employee" is defined as "[a] person in the service of another under any contract for hire, express or implied, oral or written where the employer has the power or right to control and direct the employee in material details of how the work is performed." Black's Law Dictionary 471 (5th ed. 1979). Webster's Third New International Dictionary of the English Language (Webster's Third New International Dictionary) defines an "employee" as "one employed by another in a position below the executive level and usually for wages." Webster's Third New International Dictionary 743 (3d ed. 1993). An "appointee" is "[a] person who is appointed or selected for a particular purpose, as the appointee under a power of appointment is a person who receives the benefit of the power." Black's Law Dictionary 91 (5th ed. 1979). Webster's Third New International Dictionary defines an "appointee" as "one that is appointed (as to an office)." Webster's Third New

10

International Dictionary 105 (3d ed. 1993). An "appointment" is the "selection or designation of a person, by the person or persons having authority therefor, to fill an office or public function and discharge the duties of the same." Black's Law Dictionary 91 (5th ed. 1979). Webster's Third New International Dictionary defines "appointment" as a "designation of a person to hold a non-elective office or perform a function." Webster's Third New International Dictionary 105 (3d ed. 1993).

Applying the common usage definitions to this case, the Governor sought applications from individuals interested in a gubernatorial appointment to a judicial vacancy on the Commonwealth Court. Neither the Governor nor the Commonwealth agencies he oversees entered into an employer/employee relationship with any of the applicants. Further, while the Governor appoints individuals to judicial vacancies, he does not hire them. Indeed, his appointment alone is not enough to bestow the judicial office on the successful applicant, as any appointee is subject to the Pennsylvania Senate's advice and consent. Pa. Const. art. V, § 13(b). Only if the Senate gives its consent does the appointee become a public official of the Commonwealth. The appointee does not become an employee of the Governor or the agencies under his jurisdiction.

Similarly, using the common usage definitions, individuals who applied for a gubernatorial appointment to a judicial vacancy but whom the Governor passed over cannot be considered employees who were not hired by OGC or the Governor's Office. These applicants never applied for employment with OGC or the Governor. We conclude, based on the common approved usage of the words "employee," "appointee," and "appointment," that the individuals who submitted applications for a gubernatorial appointment are neither agency employees nor are they individuals who were not hired by an agency, and, consequently, the exemption provided by

11

Section 708(b)(7)(iv) of the RTKL does not apply to the applications of individuals seeking a judicial appointment from the Governor to fill the vacancy. While it is not necessary for us to utilize the other tools of statutory construction in reaching this conclusion, we note that there are two other reasons to support our determination.

First, we are persuaded by Requesters' argument that the language the General Assembly used in Section 708(b)(7) of the RTKL differs from other provisions in the Section 708(b) exemptions. For example, Section 708(b)(6)(ii) of the RTKL, 65 P.S. § 67.708(b)(6)(ii), specifies that "[n]othing in this paragraph shall preclude the release of the name, position, salary, actual compensation or other payments or expenses, employment contract, employment-related contract or agreement and length of service of *a public official or an agency employee*." (Emphasis added.) Further, in Section 708(b)(12) of the RTKL, 65 P.S. § 67.708(b)(12), the General Assembly exempts from disclosure "[n]otes and working papers prepared by or for *a public official or agency employee* used solely for that *official's or employee's* own personal use." (Emphasis added.) Finally, the language the General Assembly uses in Section 708(b)(13) of the RTKL, 65 P.S. § 67.708(b)(13), exempts from disclosure "[r]ecords that would disclose the identity of an individual who lawfully makes a donation to an agency unless the donation is intended for or restricted to providing remuneration or personal tangible benefit to a named *public official or employee of the agency*." (Emphasis added.)

The foregoing clearly establishes that the General Assembly distinguishes between public officials and employees of Commonwealth agencies in the RTKL. It thus could have included the terms "public official" and "agency employee" in the specific language of Section 708(b)(7)(iv) of the RTKL, so that the exemption

12

applied to both "agency employees" and individuals seeking an appointment to a vacant elected office (*i.e.*, a public official). The General Assembly, however, did not do so when it adopted the express language of Section 708(b)(7), and we will not construe the statute to include words that the General Assembly omitted.

Second, we are also persuaded by Requesters' argument that the Sunshine Act, 65 Pa. C.S. §§ 701-716, makes distinctions between "appointments" and "employment" that are instructive to our interpretation of Section 708(b)(7) of the RTKL. We have held:

> The [RTKL] is one of a series of legislative enactments designed to provide a comprehensive format governing public access to the meetings and hearings of public agencies. The other statutes are now embodied in the Sunshine Act. Because they relate to the same class of things, information about actions by public agencies, the [RTKL] and Sunshine Act are in pari materia. Indeed, this has been the practice for Commonwealth agencies since 1974. Therefore, they shall be construed together, if possible, as one statute.

*Silver v. Borough of Wilkinsburg*, 58 A.3d 125, 128 (Pa. Cmwlth. 2012) (citing *Schenck v. Twp. of Center, Butler Cnty.*, 893 A.2d 849, 853 (Pa. Cmwlth. 2006)), *appeal denied*, 76 A.3d 540 (Pa. 2013). The Sunshine Act makes a distinction between "employees" and "appointees," in that "employees" are "employed" while "appointees" or "public officers" are "appointed." 65 Pa. C.S. § 708(a)(1). Specifically, in providing the reasons an agency may hold an executive session, the Sunshine Act provides:

> To discuss any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of performance, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the agency, or former public officer or employee, provided, however, that the individual employees or appointees whose rights could be adversely affected may request, in writing, that the matter or matters be discussed at an open meeting.

13

*Id.* Requesters argue that "[i]f public officers, also referred to as appointees in the Sunshine Act, were subsumed within the class of 'employees,' then the repeated mention of 'appointees' and 'public officers' throughout this provision would be meaningless surplusage" and, consequently, applying the presumption against redundancies provided by 1 Pa. C.S. § 1922, a public officer or appointee is distinguishable from an employee under the Sunshine Act. (Requesters' Brief at 13.) Requesters submit that "[r]eading [Section] 708(a)(1) of the Sunshine Act in conjunction with the RTKL, it follows that a public officer—such as a Commonwealth Court judge appointed to fill a vacancy on the Court—is not an 'agency employee.'" (Requesters' Brief at 14.) We agree with Requesters that the Sunshine Act further supports that OOR did not err when it determined that the Section 708(b)(7)(iv) exemption does not apply to the applications at issue in this case.

## B. Section 708(b)(10) of the RTKL—Predecisional Deliberation Exemption

OGC's second argument is that the judicial vacancy applications are protected by the deliberative process exemption provided by Section 708(b)(10)(i) of the RTKL. Section 708(b)(10)(i) of the RTKL, exempts a record that reflects:

> (A) The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.
>
> (B) The strategy to be used to develop or achieve the successful adoption of a budget, legislative proposal or regulation.

65 P.S. § 67.708(b)(10)(i). This Court has reasoned that "'[t]he deliberative process privilege benefits the public and not the officials who assert the privilege . . .

14

[because] if governmental agencies were forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer.'"[12] *McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014) (quoting *Joe v. Prison Health Servs., Inc.*, 782 A.2d 24, 33 (Pa. Cmwlth. 2001)).

"To prove the predecisional deliberation exception, an agency is required to show three things: '(1) the information is internal to the agency; (2) the information is deliberative in character; and[] (3) the information is prior to a related decision, and thus 'predecisional.'" *McGowan*, 103 A.3d at 381 (quoting *Carey*, 61 A.3d at 379). "[A]n agency must explain how the information withheld reflects or shows the deliberative process in which an agency engages during its decision-making." *Carey*, 61 A.3d at 379.

OOR determined that OGC did not demonstrate that the responsive applications reflect internal, predecisional deliberations. (Final Determination at 7-10.) OGC argues that OOR took "an unduly restrictive view of the types of documents that may be used in deliberations" when it determined that the applications were not exempt as internal predecisional deliberations. (OGC's Brief at 13.) OGC maintains that the exemption applies to broad classifications of records, including research, memos, or other documents used in the predecisional deliberations, rather than specifically identified examples. (OGC's Brief at 16, 17.) Conversely, Requesters argue the requested applications: (1) are not internal to OGC; (2) are not deliberative in character; and (3) do not constitute "research,

---

[12] This Court has held that: (1) the predecisional deliberative exception at Section 708(b)(10)(i) codifies the deliberative process privilege; (2) "the requisite elements of proof are identical[;]" and (3) "case law interpreting the deliberative process privilege applies." *Carey v. Dep't of Corr.*, 61 A.3d 367, 378 n.6 (Pa. Cmwlth. 2013).

15

memos, or other documents" within the meaning of the deliberative process exemption. (Requesters' Brief at 18-23.) Our review of the arguments indicates that neither party is contesting that the applications at issue were reviewed and used prior to a related decision—*i.e.*, the Governor's decision on whom to appoint to fill the judicial vacancy. Accordingly, we will instead focus on the first two factors OGC must prove for the Section 708(b)(10)(i) exemption to apply to the applications.

We first consider whether the information is internal to the agency. *McGowan*, 103 A.3d at 381. In determining whether the applications are internal to OGC, we have held that "[r]ecords may satisfy the 'internal' element when they are maintained internal to one agency or among governmental agencies." *Off. of Governor v. Davis*, 122 A.3d 1185, 1193 (Pa. Cmwlth. 2015). Requesters seek to distinguish the applications at issue because they were submitted to OGC by third-party applicants seeking a judicial vacancy appointment and, therefore, are not communications within one agency or among multiple agencies. Requesters rely on our recent decision in *Finnerty v. Pennsylvania Department of Community and Economic Development*, 208 A.3d 178, 189 (Pa. Cmwlth.), *appeal granted*, 222 A.3d 755 (Pa. 2019), to support this argument.

In *Finnerty*, the requester submitted a RTKL request for financial records to the Department of Community and Economic Development (DCED), which had entered into a contract with a financial consultant to act as a coordinator in addressing a municipality's financial problems. *Finnerty*, 208 A.3d at 180. The records requested included documents exchanged between the contracted financial consultant and DCED. *Id.* at 181. DCED withheld records from its response, in relevant part, based on the predecisional deliberation exemption set forth in Section 708(b)(10)(i) of the RTKL. *Id.* at 182. The requester appealed

16

DCED's refusal to OOR, which, after conducting an *in camera* review, concluded that some of the withheld records were exempt as they reflected internal, predecisional deliberations. *Id*. at 184. The requester next appealed OOR's decision to this Court, arguing that exceptions to the RTKL should be interpreted narrowly and that internal records should be limited to records shared within the agency or among several agencies. *Id*. at 185.

This Court addressed the question of whether information shared between an agency and an entity with which the agency contracts is still "internal to an agency," and, after determining that Section 708(b)(10)(i) of the RTKL does not explicitly address this question, utilized the tools of the Statutory Construction Act (1 Pa. C.S. § 1921(c)) to ascertain the General Assembly's intent. *Id*. at 186. We held that, due to the contractual relationship between DCED and the consultant, the deliberative information exchanged between them was exempt under Section 708(b)(10)(i) of the RTKL. *Id*. at 187. We reasoned that the "General Assembly contemplated that [DCED], in order to assist municipalities facing financial distress, would require the assistance of a consultant." *Id*. "In reaching this conclusion, we are guided by the fact that state 'agencies occasionally will encounter problems outside their ken, and it clearly is preferable that they enlist the help of outside experts skilled at unravelling . . . knotty complexities.'" *Id*. (citations omitted). We affirmed OOR's decision. *Id*. at 190.

Here, Requesters' focus on the fact that there is no contractual relationship between the applicants seeking to fill the judicial vacancy and any agency is misplaced. Independent of any contract, we have previously held that "[t]he origination of records from outside an agency does not preclude application of the RTKL exceptions." *Davis*, 122 A.3d at 1193 (citing *Bagwell v. Dep't of*

17

*Educ.*, 76 A.3d 81, 90 (Pa. Cmwlth. 2013)). "Private persons and entities may create correspondence and send it to an agency, thereby potentially making it a record of the agency." *Bagwell*, 76 A.3d at 90. In this case, the fact that third parties sent the applications to OGC does not preclude the application of this exemption. Further, based on the Dinniman Affidavit, OGC maintained the applications within OGC and its designees. (R.R. at 16a.) We, therefore, agree with OGC and OOR that the applications meet the first factor in the applicability of the Section 708(b)(10)(i) deliberate process exemption.

We next focus on the second factor: whether the information is deliberative in character. Section 708(b)(10)(i)(A) of the RTKL specifies that predecisional deliberations of an agency include topics such as "budget recommendation[s], legislative proposal[s], legislative amendment[s], contemplated or proposed polic[ies] or course[s] of action *or any research, memos or other documents used in the predecisional deliberations*." (Emphasis added.) "Only information that constitutes confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice is protected as deliberative." *Carey*, 61 A.3d at 378-79 (citing *In re Interbranch Comm'n on Juv. Just.*, 988 A.2d 1269, 1277-78 (Pa. 2010)).

We agree with OGC that Section 708(b)(10)(i) of the RTKL applies to broad classifications of records and is not limited to the specifically identified examples listed therein; however, the focus should not be on what the document is titled as much as the nature of the information contained within the document. The Pennsylvania Supreme Court pronounced:

> Information that is purely factual, even if decisionmakers used it in their deliberations[,] is usually not protected. . . . [A]bsent a claim that disclosure would jeopardize state secrets, memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available [for disclosure].

18

*McGowan*, 103 A.3d at 385 (quoting *Cmwlth. v. Vartan*, 733 A.2d 1258, 1264 (Pa. 1999) (plurality) (citations omitted) (emphasis omitted)). "In *Carey*, this Court adopted our Supreme Court's discussion in *Vartan* that purely factual material is severable and, in general, should be disclosed even when it is located within a document containing exempted predecisional deliberations." *Id.* at 386 (citing *Carey*, 61 A.3d at 378-80). We reasoned:

> Although it can be difficult in some instances to segregate purely factual material from deliberative communications, most of the disputes
>
>> may be able to be decided by application of the simple test that factual material must be disclosed but advisory material, containing opinions and recommendations, may be withheld. The test offers a quick, clear, and predictable rule of decision, but courts must be careful not to become victims of their own semantics. [The exemption] is intended to protect the deliberative process of government and not just deliberative material. Perhaps in the great majority of cases, that purpose is well served by focusing on the nature of the information sought.

*McGowan*, 103 A.3d at 386 (quoting *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977)). Simply stated, "[f]actual information is not deliberative in character." *Twp. of Worcester v. Off. of Open Recs.*, 129 A.3d 44, 61 (Pa. Cmwlth. 2016).

Requesters submit, based on a copy of the application of the individual appointed to fill the judicial vacancy that OGC provided them on December 18, 2019, that:

> [t]he majority of the information contained within the requested records at issue here—work experience, education, and other background information about the applicants for the Commonwealth Court vacancy—is factual in nature, not deliberative . . . . The requested applications contain factual information about the applicants that they themselves have submitted; the records are thus not deliberative in

19

character and for that reason . . . cannot be withheld under the [d]eliberative [p]rocess [e]xemption.

(Requesters' Brief at 21.) This supplements what Ms. Dinniman attested to in her affidavit that "[t]he responsive records consist of applications submitted by individuals who seek appointment to a vacancy on Pennsylvania's Commonwealth Court." (R.R. at 16a.) Absent from Ms. Dinniman's affidavit is any averment claiming that the applications themselves contain any notes or opinions that could be considered deliberative. Moreover, the scope of the request does not include any memoranda that contains recommendations of one applicant being more qualified than another. Rather, the request seeks the applications, which contain work experience, education, and other background information about the applicants. Accordingly, we conclude that OGC did not meet its burden of proof that the applications at issue are in themselves "deliberative," and, consequently, they are not exempt predecisional deliberations pursuant to Section 708(b)(10)(i) of the RTKL.

### C. Constitutional Protections Afforded Third Parties

Citizens of the Commonwealth, pursuant to Article I, Section I of the Pennsylvania Constitution, have a right to informational privacy—*i.e.*, to control access to and dissemination of their personal information.[13] *Pa. State Educ. Ass'n v. Dep't of Cmty. & Econ. Dev.*, 148 A.3d 142, 150 (Pa. 2016) (*PSEA*). Third parties whose personal information is contained within a public record must be afforded

---

[13] Article I, Section 1 provides:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursing their own happiness.

Pa. Const. art. I, § 1.

notice and an opportunity to be heard in a record request proceeding. *City of Harrisburg v. Prince*, 219 A.3d 602, 619 (Pa. 2019). Before the government may release personal information, it must conduct a balancing test to determine whether the right of informational privacy outweighs the public's interest in dissemination. *PSEA*, 148 A.3d at 144. It is the obligation of the agency disseminating the requested record to perform the balancing test, unless legislative pronouncements or prior decisions of Pennsylvania courts have already done so. *Prince*, 219 A.3d at 619; *Reese v. Pennsylvanians for Union Reform*, 173 A.3d 1143, 1159 (Pa. 2017). Pursuant to a *PSEA* balancing test, constitutional considerations may necessitate redaction of personal information not otherwise permissible under the RTKL. *Reese*, 173 A.3d at 1159.

This Court has observed, "with some concern, that this arrangement relies on agencies to protect third-party privacy interests." *West Chester Univ. of Pa. v. Rodriguez*, 216 A.3d 503, 511 (Pa. Cmwlth. 2019). We have explained:

> Notably, the constitutional right to informational privacy inheres not in agencies, but in individuals who are not usually parties to the RTKL proceeding. The RTKL does not require that such third parties receive notice that a determination affecting their constitutional rights has been appealed. Even when interested third parties learn of an appeal, they cannot participate as parties to the proceeding, and they may supply additional information or argument only at . . . OOR's discretion. . . .
>
> In an ideal situation we would rely on those who claim the right to assert it timely. Because of the lack of meaningful procedural due process protections afforded to those whose private information is sought through the RTKL, that obligation must fall on the agencies that hold this information and have the wherewithal, in the context of the RTKL, to protect it from disclosure.

*Id.* at 510-11 (citations omitted) (footnote omitted). We have also cautioned that "there may come a time when a requester seeks a public record that does not fall

under an exemption set forth in the RTKL, but where disclosure of the public record would violate a third [] party's rights under the Pennsylvania Constitution." *Id.* at 511 (quoting *Governor's Off. of Admin. v. Purcell*, 35 A.3d 811, 821 (Pa. Cmwlth. 2011) (Brobson, J., concurring)).

Here, it is likely that the responsive documents may contain information potentially subject to a constitutional right to privacy. Although OOR has granted OGC the authority to redact from the responsive records personal identification information protected from access by Section 708(b)(6)(i)(A) and (B), 65 P.S. § 67.708(b)(6)(i)(A), (B), it is unclear from the record (1) whether OGC notified the individuals whose applications OGC must produce,[14] and (2) whether OGC performed the balancing test required by *PSEA* and its progeny. Accordingly, the Court will vacate the portion of the Final Determination that ordered OGC to provide Requesters with the applications of the individuals who were not selected for the judicial vacancy appointment and remand the matter to OOR to provide notice and an opportunity to be heard to third parties and to perform the balancing test required under *PSEA*.

## IV. CONCLUSION

Based on the foregoing analysis, we will affirm the Final Determination to the extent that it rejected OGC's claim that the requested records were exempt under Sections 708(b)(7)(iv) and 708(b)(10)(i) of the RTKL. We nonetheless will vacate the portion of the Final Determination that ordered OGC to provide Requesters with the applications of the individuals who were not selected for the judicial vacancy appointment. We remand this matter to OOR for the sole purpose of reconsidering

---

[14] OGC's attorney represented at the December 8, 2020 oral argument that he was unsure if the individuals whose applications OGC must produce were notified of their potential release.

22

the portion of its decision ordering disclosure of the requested records in light of the Pennsylvania Supreme Court's decision in *PSEA*.

_____
P. KEVIN BROBSON, Judge

Judge Crompton did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Office of General Counsel,        :
                Petitioner  :
                            :
        v.                :  No. 1764 C.D. 2019
                            :
Brad Bumsted and LNP Media  :
Group, Inc.,                 :
             Respondents  :

# O R D E R

AND NOW, this 23rd day of February, 2021, it is hereby ordered that the November 20, 2019 Final Determination of the Pennsylvania Office of Open Records (OOR) is AFFIRMED, in part, and VACATED, in part. This matter is REMANDED to OOR for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge