IN THE COMMONWEALTH COURT OF PENNSYLVANIA

York County,                          :
              Appellant          :
                           :   No.  182 C.D. 2020
          v.                          :
                           :   Submitted:  October 16, 2020
John Coyle                            :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE J. ANDREW CROMPTON, Judge


## _OPINION NOT REPORTED_

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                 FILED:  August 6, 2021


York County (County) appeals from the January 28, 2020 order of the Court of Common Pleas of York County (trial court), which denied, in part, the County's request to overturn the final determination of the Office of Open Records appeals officer (OOR) granting the Right-to-Know Law (RTKL)[1] request of John Coyle, Esq. (Requester) for records relating to various policies and procedures of the York County Prison (Prison).  We affirm in part and reverse in part.


## Background

Requester filed a request on June 13, 2019, seeking:

2.  The contract, agreement of sale, and purchase receipt for electronic control weapons in use by York County Prison corrections officers in 2018.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

3. Any training materials provided to York County by the supplier of electronic control weapons in use at York County Prison in 2018.

4. All written policies governing the provision of healthcare to inmates at York County Prison in effect as of April 1, 2018.

5. All written policies governing the provision of mental health services to inmates at York County Prison in effect as of April 1, 2018.

6. All written policies governing the use of force by corrections officers at York County Prison in effect as of April 1, 2018.

7. All written policies governing confrontations of mentally unstable individuals at York County Prison in effect as of April 1, 2018.

8. All written policies governing the intake of new inmates at York County Prison in effect as of April 1, 2018.

(OOR Final Determination at 1-2; Reproduced Record (R.R.) at 3a-4a.) Although the County provided certain records to Requester, it partially denied the request with respect to the above-listed items, contending that disclosure of the requested policies would threaten personal security and public safety, thus rendering the records exempt from disclosure under section 708(b)(1)(ii) and 708(b)(2) of the RTKL, 65 P.S. §67.708(b)(1)(ii), (b)(2).[2] The County further contended that Item 4 was insufficiently

---

[2] Section 708(b)(1)(ii) of the RTKL exempts a record from access where its disclosure "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. §67.708(b)(1)(ii). Section 708(b)(2) exempts "[a] record maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity or a record that is designated classified by an appropriate Federal or State military authority." 65 P.S. §67.708(b)(2).

specific. *See* section 703 of the RTKL, 65 P.S. §67.703 (a request "should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested").[3]

Requester appealed to the OOR on July 23, 2019. The OOR invited both parties to supplement the record and directed the County to notify any interested third parties of their ability to participate in Requester's appeal. On August 13, 2019, the County submitted a position statement reiterating the reasons for its denial, and it provided supporting affidavits of the Warden of the Prison, Clair Doll, and Deputy Warden Valerie Conway.[4] The County further suggested that the requested medical policies contain confidential, proprietary information of PrimeCare Health, Inc. (PrimeCare), the Prison's health services contractor.[5] In response to the OOR's request for clarification, the County submitted a letter indicating that it forwarded the appeal packet to PrimeCare and had a discussion with PrimeCare's counsel regarding its ability to participate in the appeal. PrimeCare, however, did not submit a request to participate or any other materials.

To assess whether an exemption from disclosure applied, the OOR reviewed the affidavits of Warden Doll and Deputy Warden Conway. Regarding Items 2 and 3, which concerned electronic control weapons, Warden Doll suggested that disclosure of purchase information would allow inmates to "understand the amount of

---

[3] The County did not pursue its assertion of insufficient specificity before the OOR, and has not advanced that argument before this Court.

[4] For purposes of the RTKL, "[t]estimonial affidavits found to be relevant and credible may provide sufficient evidence in support of a claimed exemption." *McGowan v. Pennsylvania Department of Environmental Protection*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014).

[5] Section 708(b)(11) of the RTKL exempts from disclosure a "record that constitutes or reveals a trade secret or confidential proprietary information." 65 P.S. §67.708(b)(11).

electronic control weaponry available and be able to calculate a prisoner response to counteract the available electronic control techniques," and that disclosure of training materials for those weapons similarly could "compromise the effectiveness and proper use of the electronic devices." (OOR Final Determination at 8 (quoting Warden Doll Affidavit).) Regarding Items 4 through 8, which concerned policies governing healthcare, mental health services, use of force, and inmate intake, Warden Doll suggested that disclosure of these policies "would allow individuals the opportunity to devise plans to counter staff responses or allow inmates to circumvent the collection of certain information that would result in improper classification," could "compromise the effectiveness of the countermeasures to deescalate" confrontations, and would reveal trade secrets or propriety information of the Prison's healthcare contractor. *Id.* at 8-9 (quoting Warden Doll Affidavit). Deputy Warden Conway's affidavit, the OOR noted, "echo[ed] the assertions made by Warden Doll in his affidavit regarding security and safety." *Id.* at 9.

The OOR noted that the personal security and public safety exemptions both require a determination that disclosure of a requested record would be "reasonably likely" to result in a specified consequence, namely "a substantial and demonstrable risk of physical harm" to an individual, or to "to jeopardize or threaten public safety." 65 P.S. §67.708(b)(1)(ii), (2). Although the RTKL does not define the meaning of "reasonably likely," the OOR noted that this Court has interpreted the term as "requiring more than speculation." (OOR Final Determination at 6 (quoting *Carey v. Department of Corrections*, 61 A.3d 367, 374-75 (Pa. Cmwlth. 2013).) A "substantial and demonstrable risk," the OOR related, has been defined as a risk that is "actual or real and apparent." *Id.* (quoting *Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 180 (Pa. Cmwlth. 2019) (emphasis omitted)). The OOR noted that it has found certain

4

prison procedures exempt from disclosure in previous cases under section 708(b)(1) and (b)(2) of the RTKL, but has distinguished portions of prison policies that were "administrative in nature versus those that were tactical in nature." *Id.* at 11 (citing *Collier v. Indiana Borough*, OOR Dkt. No. AP 2017-2356 (filed February 13, 2018)).

With regard to Items 2, 3, and 6, concerning the electronic control weapons and use of force policy, the OOR observed that "the County neither identifies nor describes the responsive records or their contents, nor does it identify and provide a general description of portions that are administrative, as compared to the portions that are tactical in nature and may be redacted." *Id.* The OOR found the affidavits of Warden Doll and Deputy Warden Conway "conclusory" and too speculative to carry the County's burden to establish the personal security or public safety exemptions. *Id.* at 12. The OOR reached a similar conclusion with regard to the medical procedures and policies requested in Items 4, 5, and 7, as well as the intake procedures requested in Item 8. *Id.* at 12-14.

The OOR separately addressed and rejected the County's contention that the requested healthcare policies constituted confidential proprietary information or trade secrets. The OOR noted that section 102 of the RTKL, 65 P.S. §67.102, provides specific definitions of "confidential propriety information" and "trade secret," and that the County had not addressed the required elements. (OOR Final Determination at 16.) Moreover, similar to its conclusion regarding the personal security and public safety exemptions, the OOR found that the County had offered merely "conclusory statements" about any propriety information or trade secrets of the Prison's healthcare contractor. *Id.*

Finding that the County failed to meet its burden to establish an exemption from disclosure for the requested records, the OOR granted Requester's appeal and

directed the County to provide the responsive records within 30 days. The County appealed the OOR's determination to the trial court on November 4, 2019. The trial court held argument on December 10, 2019.

Before the trial court, the County submitted an additional affidavit of Warden Doll, elaborating upon the asserted grounds for denying the request. Although Requester objected to the submission of this affidavit, the trial court observed that parties are permitted to submit additional materials during a *de novo* appeal. (Trial Ct. Order, 1/28/2020, at 4-5; R.R. at 152a-53a (citing *Levy v. Senate of Pennsylvania*, 65 A.3d 361 (Pa. 2013)).) Nonetheless, the trial court expressed concern about "a disturbing trend in recent cases" in which the County submits materials on *de novo* review that it did not make available to the OOR. *Id.* at 5. The trial court noted that this Court, as well, has commented on the practice, cautioning that "[a]ccepting additional evidence without cause essentially allows agencies to withhold records without legal grounds until reaching a Chapter 13 court,[6] undermining the presumption of openness that forms the foundation of the current RTKL." *Id.* (quoting *Mission Pennsylvania, LLC v. McKelvey*, 212 A.3d 119, 130 (Pa. Cmwlth. 2019) (*en banc*), *aff'd in part and vacated in part*, 3-5 MAP 2020, __ A.3d __ (Pa. filed July 21, 2021)). The trial court suggested that "one might conclude that the County was 'sandbagging' the OOR appeal process since no explanation was given for the recent submission of the Warden's affidavit," especially given that the Warden indicated that he was aware of the OOR appeal and, indeed, submitted an affidavit to the OOR. *Id.*

---

[6] A "Chapter 13 court" refers to the court that reviews the decision of the OOR appeals officer, which may be either this Court or a court of common pleas, depending upon whether the matter arises from a determination made by a Commonwealth agency or a local agency. *See* sections 1301-02 of the RTKL, 65 P.S. §§67.1301-02; *Bowling v. Office of Open Records*, 75 A.3d 453, 458 (Pa. 2013) (*Bowling II*) (noting that the Commonwealth Court and the courts of common pleas are "collectively referred to as the 'Chapter 13 courts,' in reference to the chapter of the RTKL in which their relevant duties are discussed"). We follow this convention herein.

6

The trial court, however, concluded that Warden Doll's new affidavit "offer[ed] little" to the trial court's analysis, with the exception of one category of requested records. *Id.*

Notably, after examining the County's initial responses to the request, the OOR's final determination, and the County's additional submissions, the trial court "adopt[ed] the findings[,] reasoning, extensive discussion of the issues and conclusions by the OOR appeals officer," with one exception. *Id.* at 6. After considering the County's latest submission, the trial court concluded that disclosure of the training materials for the Prison's electronic control weapons could reveal "potential limitations" of the system, and that "this information would be of value to someone attempting to defeat the effectiveness of a particular weapon." *Id.* at 6-7. The trial court thus found that these training materials were exempt from disclosure as records that would be "reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity" under section 708(b)(2) of the RTKL, 65 P.S. §67.708(b)(2). In all other respects, the trial court declined to disturb the OOR's final determination.[7]

The County appealed the trial court's order to this Court.[8]

---

[7] Although it did not differ with the OOR's determination, the trial court separately commented on the request for Item 2, concerning the purchase of the electronic control weapons. To the extent the County suggested that disclosure of such records could reveal the number and type of electronic control weapons available to corrections officers, the trial court opined that this "might be true of the weapons in use in 2018, but not necessarily now, nearly two years after the time period referred to in the request." (Trial Ct. Order, 1/28/2020, at 6.) With regard to the purchase of electronic control weapons in 2018, the trial court opined that "the County has not proven, beyond mere speculation, that providing the requested information would be 'reasonably likely' to threaten public safety or [the] personal security of an individual." *Id.*

[8] "When the court of common pleas is the 'Chapter 13' or reviewing court, our appellate review is limited to whether the trial court has committed an error of law and whether the findings of **(Footnote continued on next page…)**

The County presents two issues, with substantial overlap in the grounds upon which it asserts that the trial court erred. In its first issue, the County contends that the Prison's policies and procedures are exempt from disclosure as records "made confidential by law" under section 708(b)(16)(iv) of the RTKL, 65 P.S. §67.708(b)(16)(iv). In its second issue, the County asserts that all of the requested records were exempt from disclosure under the personal security and public safety exemptions under section 708(b)(1)(ii) and 708(b)(2) of the RTKL, 65 P.S. §67.708(b)(1)(ii), (b)(2). Common to both of its issues is the County's overarching contention that the trial court erred in adopting the majority of the OOR's findings of fact and conclusions of law.

With regard to the procedure that the trial court employed, the County asserts that the trial court failed to comply with section 1302(a) of the RTKL, which states that the "decision of the court shall contain findings of fact and conclusions of law based upon the evidence as a whole" and "shall clearly and concisely explain the rationale for the decision." 65 P.S. §67.1302(a). Because the trial court adopted the majority of the OOR's findings of fact and conclusions of law, the County argues that the trial court failed to conduct an independent *de novo* review. (County's Br. at 19-20, 29.) In this regard, the County seems to suggest that the trial court was obligated to issue its own findings of fact and conclusions of law.

---

fact are supported by substantial evidence." *Office of the District Attorney of Philadelphia v. Bagwell*, 155 A.3d 1119, 1123 n.3 (Pa. Cmwlth. 2017) (citing *Township of Worcester v. Office of Open Records*, 129 A.3d 44, 49 n.2 (Pa. Cmwlth. 2016)).

[9] Requester has not filed a brief in this appeal.

As it concerns the RTKL's substantive exemptions from disclosure, the County first suggests that the Prison's policies and procedures are "made confidential by law." *Id.* at 21-22 (citing 65 P.S. §67.708(b)(16)(iv)). The law purportedly rendering the policies confidential, the County asserts, is found at sections 1731-32 of the Prisons and Parole Code, 61 Pa.C.S. §§1731-32. These sections provide for boards of inspectors of county jails or prisons, give such boards the authority to "provide for the safekeeping, discipline and employment of inmates and the government and management of the correctional institution," and empower boards to "make such rules and regulations for the government and management of the county correctional institution and the safekeeping, discipline and employment of the inmates." 61 Pa.C.S. §§1731(a)(3), 1732(b)(1). The County asserts that Warden Doll's affidavit "states that the York County Prison Board determined that the policies and procedures being requested are considered to be confidential information that is not to be released to members of the public." (County's Br. at 22.) Thus, the County argues, the subject policies and procedures are "made confidential by law" for purposes of section 708(b)(16)(iv) of the RTKL, 65 P.S. §67.708(b)(16)(iv).

Alternatively, the County reiterates its view that all of the requested records implicate the personal security and public safety exemptions of section 708(b)(1)(ii) and 708(b)(2) of the RTKL, 65 P.S. §67.708(b)(1)(ii), (b)(2). In support, the County relies upon excerpts from Warden Doll's affidavit. Believing this affidavit is sufficient to establish the cited exemptions, the County takes issue with the OOR's and the trial court's characterization of it as "speculative" and "conclusory." (County's Br. at 29.) We will address the particulars of Warden Doll's affidavit with respect to each item sought by Requester, below.

9

**Discussion**

The objective of the RTKL is "to empower citizens by affording them access to information concerning the activities of their government." *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012). The RTKL was "a dramatic expansion of the public's access to government documents." *Levy*, 65 A.3d at 381. As our Supreme Court has explained:

> Whereas before a requester had the burden to prove that documents should be disclosed, the RTKL presumes documents in the possession of an agency are public records subject to disclosure, unless protected by a specific exception. [Section 305 the RTKL,] 65 P.S. § 67.305. Indeed, Section 708 places the burden of proving an exception squarely on the agency by a preponderance of the evidence. 65 P.S. § 67.708.

*Id*. We have held that we must "interpret the RTKL liberally to effect its purpose—that being, 'to promote access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions.'" *Allegheny County Department of Administrative Services v. A Second Chance, Inc.*, 13 A.3d 1025, 1034 (Pa. Cmwlth. 2011) (*en banc*) (quoting *Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010) (*en banc*) (*Bowling I*), *aff'd*, 75 A.3d 453 (Pa. 2013) (*Bowling II*)). Because we construe the law liberally in favor of disclosure, "[e]xemptions from disclosure must be narrowly construed due to the RTKL's remedial nature . . . ." *Office of the Governor v. Scolforo*, 65 A.3d 1095, 1100 (Pa. Cmwlth. 2013) (*en banc*).

## I.  Trial court's *de novo* review

At the outset, we squarely reject the County's contention that the trial court was forbidden from adopting the OOR's findings of fact and conclusions of law. Our Supreme Court has directly stated that there is "nothing in the RTKL that would prevent a Chapter 13 court from simply adopting the findings of fact and conclusions of law of an appeals officer when appropriate." *Bowling II*, 75 A.3d at 473. The *Bowling II* Court further made clear that "the Chapter 13 courts are the ultimate finders of fact and that they are to conduct full *de novo* reviews of appeals from decisions made by RTKL appeals officers, *allowing for the adoption of the appeals officer's factual findings and legal conclusions when appropriate*." *Id.* at 474 (emphasis added). This Court, likewise, has echoed the Supreme Court's observation that a Chapter 13 court may adopt the findings and conclusions of the OOR appeals officer. *See Office of Open Records v. Center Township*, 95 A.3d 354, 369 (Pa. Cmwlth. 2014) (*en banc*) ("While a court of common pleas or this Court . . . may conduct *de novo*, plenary review of appeals from decisions made by appeals officers, there is 'nothing in the RTKL that would prevent [Chapter 13 courts] from simply adopting the findings of fact and conclusions of law of an appeals officer when appropriate . . . .'") (quoting *Bowling II*, 75 A.3d at 473).

This binding precedent plainly permitted the trial court to adopt the OOR's findings of fact and conclusions of law in making its decision. The fact that the trial court largely did so, moreover, does not mean that the trial court failed to conduct a *de novo* review. The trial court stated that it "examined the County's responses to the requests, the Final Determination of the OOR, and the County's additional submissions." (Trial Ct. Order, 1/28/2020, at 6; R.R. at 154a.) The trial court simply agreed with the OOR's "findings[,] reasoning, extensive discussion of the issues[,] and

11

conclusions," with one notable exception. *Id.* The trial court differed with the OOR with respect to requested Item 3, concerning training materials for electronic control weapons, the disclosure of which, the trial court reasoned, "would be reasonably likely to jeopardize or threaten public safety or preparedness or [a] public protection activity" under section 708(b)(2) of the RTKL. 65 P.S. §67.708(b)(2). Even if the trial court was not authorized to adopt the entirety of the OOR's findings of fact and conclusions of law, *see Bowling II*, 75 A.3d at 473, the trial court's divergence from the OOR's determination belies the County's assertion that the trial court failed to undertake its own review of "the evidence as a whole." Section 1302 of the RTKL, 65 P.S. §67.1302. We thus reject any assertion of error in this regard.

## II. Records "made confidential by law"

We further reject the County's contention that any record at issue is exempt under section 708(b)(16)(iv) of the RTKL, as a record "made confidential by law." 65 P.S. §67.708(b)(16)(iv). First, although the County cites statutory provisions relating to the authority of boards of inspectors of county jails or prisons, 61 Pa.C.S. §§1731-32, these statutes neither mention any particular category of records nor designate any records as confidential. The statutes are wholly silent on this matter. Even more conspicuously, though, the provision of the RTKL relating to records "made confidential by law" is not a freestanding exemption, but rather, is an example of a type of record that may be exempt as relating to a criminal investigation. The exemption cited by the County provides that only the following is exempt from disclosure:

> (16) A record of an agency *relating to or resulting in a criminal investigation, including*:
>
> * * *

12

> (iv) A record that includes information made confidential by law or court order.

65 P.S. §67.708(b)(16)(iv) (emphasis added).

The County fails to mention that the exemption that it relies upon is for records relating to or resulting in a criminal investigation. The County does not identify any such criminal investigation. Accordingly, not only do the statutes cited by the County have nothing to do with the confidentiality of records, but the RTKL exemption that it cites is wholly inapposite.

### III. Personal Security and Public Safety exemptions

The County's primary contention throughout this matter has been that all of the requested records are exempt under the RTKL's personal security and public safety exemptions. The personal security exemption provides that a record is exempt from disclosure if it "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. §67.708(b)(1)(ii). The public safety exemption provides that a record is exempt from disclosure if it is "maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity," and, "if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity . . . ." 65 P.S. §67.708(b)(2).

Both security-related exemptions require the agency to satisfy its burden of proof by showing that it is "reasonably likely" that disclosure would cause the identified harm. To make this showing, as the OOR correctly noted, this Court consistently requires that "[a]n agency must offer more than speculation or conjecture to establish the security-related exceptions under the [RTKL]." *Suber-Aponte*, 202 A.3d at 180 (quoting *California Borough v. Rothey*, 185 A.3d 456, 468 (Pa. Cmwlth.

13

2018)). For purposes of the personal security exemption, we have defined the phrase "substantial and demonstrable risk" as "actual or *real and apparent*." *Id.* (quoting *Carey*, 61 A.3d at 373) (emphasis in original). This Court has held, moreover, that "the RTKL's security-related exceptions are of particular concern in police and prison settings." *Id.* at 183.

As noted above, the County takes issue with the OOR's characterization of its position on each of the requested items, based upon Warden Doll's affidavit, as amounting to only "speculation" about the likelihood of harm resulting from disclosure. The trial court agreed with that characterization in large part, with the exception of Item 3, concerning training materials for electronic control weapons used by corrections officers. Based upon the additional affidavit of Warden Doll submitted to the trial court, the trial court concluded that these training materials could reveal "potential limitations" of the system that "would be of value to someone attempting to defeat the effectiveness of a particular weapon." (Trial Ct. Order, 1/28/2020, at 6-7.) Because the trial court's analysis of Item 3 was favorable to the County, it is not at issue in the County's appeal. However, the trial court's reasoning is applicable to another category of requested items, to which we now turn.

### Items 6 and 7 – Policies governing the use of force and confrontations of mentally unstable individuals

With regard to the Prison's use of force policies, requested in Item 6, and the polices governing confrontations with mentally unstable individuals, requested in Item 7, the County relies upon Warden Doll's explanation of the security risks of disclosure. Warden Doll's affidavit states:

> Policies and procedures involving force, restraints, cell extractions, and electronic stun device, [and] policies and procedures that involve, instruct, or explain how staff uses techniques and tools to deescalate, control or restrain

14

> prisoners are critical documents to maintaining the orderly operation of the prison and the safety of the public. Providing prisoners information on when force is necessary, how it is applied and all the steps to do so provides prisoners an inher[ent] advantage over staff members who attempt to apply these tactics and procedures.
>
> Specifically, a prisoner could counter the control technique staff is attempting to apply as the prisoner understands the specific target areas and motions the staff is making. An example is when a staff member attempts to break the grip a prisoner has on him or her, but when they [sic] attempt to do so the prisoner has countered the attempt because they [sic] understood the staff member[']s training and the prison's control techniques.

(Warden Doll Affidavit ¶19, R.R. at 41a-42a; County's Br. at 27-28 (capitalization modified).)

Specifically regarding confrontations with mentally unstable individuals, Warden Doll added:

> It is especially clear that releasing records governing the management of violent or distraught individuals can compromise the effectiveness of the counter measures to deescalate the situation. The prison tactics, if known . . . will become less effective and thus, compromises [sic] safety and security.

(Warden Doll Affidavit ¶23, R.R. at 45a; County's Br. at 29.)

Unlike other requested items, discussed below, the Prison's policies governing the use of force and the confrontation of mentally unstable individuals both relate directly to altercations between inmates and staff members. Warden Doll articulated a specific concern that, if known to inmates, these policies could be used to counter the application of force, thereby giving inmates an advantage over staff members and jeopardizing the security of the Prison. In the language of the trial court,

15

if inmates were to learn the details of the Prison's policies governing the application of force, they could develop an understanding of the "potential limitations" thereof, which "would be of value to someone attempting to defeat the effectiveness" of a staff member's use of force to maintain the security of the Prison. (Trial Ct. Order, 1/28/2020, at 6-7.) There is little to differentiate the concerns that would arise from the disclosure of these policies from those attending the disclosure of the training materials for electronic control weapons.

We find that Warden Doll's explanation of the concern relating to the use of force was not speculative, and that he detailed a "real and apparent" risk to the safety of staff members. *Carey*, 61 A.3d at 373. We reiterate, moreover, that these security interests "are of particular concern in police and prison settings." *Suber-Aponte*, 202 A.3d at 183. Although the trial court based its decision regarding the training materials upon the public safety exemption of section 708(b)(2) of the RTKL, we reach a slightly different conclusion with respect to the policies requested in Items 6 and 7. Because these policies directly relate to potential confrontations between inmates and staff members, their disclosure "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security" of those staff members; they thus are exempt from disclosure under section 708(b)(1)(ii) of the RTKL, 65 P.S. §67.708(b)(1)(ii). We accordingly reverse the trial court's order in this respect.

### Item 2 – Purchase of electronic control weapons

With regard to the contract and purchase receipt for electronic control weapons purchased by the Prison in 2018, the County relies upon Warden Doll's explanation:

> Specifically, the release of this information would provide a prisoner the direct knowledge of how many electronic stun devices are available and the specific model numbers of each

16

device. Access to this knowledge informs the prisoners of how many prisoners are needed to overwhelm and overcome the number of devices that could be used simultaneously to quell a disturbance. For example, if the prison has a total of five electronic stun devices, then the prisoners understand that only five prisoners could be affected and a total of six or more are needed to overwhelm the security staff.

(Warden Doll Affidavit ¶15, R.R. at 34a; County's Br. at 26.)

As noted above, *supra* note 7, the trial court concluded that, because the request, filed in 2019, concerned electronic control weapons purchased in 2018, and because additional time had elapsed since the request, it was not "reasonably likely" that disclosure of requested information would pose a threat to personal security or public safety. Specifically, to the extent that disclosure of the contract and purchase receipt would reveal the number and type of electronic control weapons in use at the Prison, the trial court stated that this "might be true of the weapons in use in 2018, but not necessarily now, nearly two years after the time period referred to in the request." (Trial Ct. Order, 1/28/2020, at 6.) We find no error in the trial court's observation. For inmates to develop a strategy based upon the 2018 contract and purchase receipt, they would have to assume that the Prison had purchased no other electronic control weapons at any time before or after 2018. This is quite a leap from the narrow scope of the information sought. Accordingly, we find no error in the trial court's conclusion that records responsive to requested Item 2 are not "reasonably likely" to threaten personal security or public safety for purposes of section 708(b)(1)(ii) or (b)(2) of the RTKL.

**Items 4, 5, and 8 – Healthcare, mental health treatment, and intake policies**

As with the other requested items, with regard to the Prison's policies governing the provision of healthcare, mental health treatment, and intake of new

17

inmates, the County relies upon Warden Doll's affidavit. Concerning the provision of physical and mental healthcare to inmates, Warden Doll explained:

> [T]he release of such records undermines the effectiveness of the screening and assessment process by providing prisoners the knowledge and understanding of when a prisoner may be transferred to an outside care provider, such as a hospital. A transport outside the secure prison represents a higher risk situation for staff and the public as [] all the controls and tools provide[d] by the secure prison are no longer available. For example, a prisoner who understands symptoms to feign that will result in an emergency transport could arrange for family or friends to meet him or her at the hospital in [an] attempt to escape or provide the prisoner contraband.

(Warden Doll Affidavit ¶17, R.R. at 39a; County's Br. at 26.)[10]

A specific issue concerning mental healthcare policies, Warden Doll suggested, is suicide prevention:

> A primary risk for individuals with serious mental illness is suicide. The release of mental healthcare policies and procedures along with the suicide prevention policy would decrease the effectiveness of the mental health and suicide prevention programs. Specifically, a prisoner would learn how suicide risk assessment tools determine if a person is at risk for suicide or not. They [sic] would also learn the behaviors and expectations to avoid placement on suicide precautions in order to successfully carry[ ]out their [sic] suicidal ideations/plan.

(Warden Doll Affidavit ¶17, R.R. at 40a; County's Br. at 27.)

Finally, concerning policies relating to the intake of new inmates, Warden Doll explained:

---

[10] Warden Doll also continued to assert that the Prison's healthcare policies constitute the proprietary, confidential information of its contractor, PrimeCare. The County has not pursued this theory on appeal.

18

During the classification process, prisoners are asked questions to gather information regarding their criminal history, substance use, health concerns, prior jail and prison adjustments, employment, etc. This information has positive and negative effects on a prisoner's custody level. If a prisoner understands how the classification level is either increased (due to more security concerns) or decreased (due to less security concerns) they [sic] can effectively decrease their [sic] classification level. This decrease in level places higher risk and potentially violent prisoners in housing units not designed to manage their security needs in addition to placing lower risk prisoners and staff in potential harm's way.

(Warden Doll Affidavit ¶20, R.R. at 43a; County's Br. at 28-29.)

We agree with the trial court that these concerns are not sufficient to establish that disclosure of the policies governing healthcare, mental health treatment, and intake would be "reasonably likely" to endanger personal security or public safety. With regard to each policy, Warden Doll described a potential for a cascading sequence of events, all premised upon a supposed increase in an inmate's capacity to lie about his health or background, thus triggering a security-related decision by Prison staff, which the inmate might be able to exploit at some point in the future. These concerns are unlike those relating to the policies governing the use of force or confrontations with unstable inmates, which directly implicate the personal security of staff members. With regard to the healthcare, mental health, and intake policies requested in Items 4, 5, and 8, the articulated security concerns are far more attenuated. For this information to raise any security risk, each domino in the hypothetical sequence of events must fall precisely as Warden Doll fears.

Although we must take seriously the potential for security issues in jails and prisons, *Suber-Aponte*, 202 A.3d at 183, the relevant exemptions of the RTKL

19

nonetheless require the establishment of a reasonable *likelihood* of a risk to personal security or public safety. 65 P.S. §67.708(b)(1)(ii), (b)(2). Moreover, these exemptions, like all exemptions under the RTKL, must be narrowly construed. *Scolforo*, 65 A.3d at 1100. The articulated concerns relating to the records responsive to requested Items 4, 5, and 8 rely upon "speculation or conjecture" about the possible uses of information derived from those records, which is insufficient to establish the RTKL's security-related exemptions. *Suber-Aponte*, 202 A.3d at 180; *Rothey*, 185 A.3d at 468. Accordingly, we find no error in the trial court's determination with regard to these items.

## Conclusion

The trial court correctly determined that records responsive to requested Items 2, 4, 5, and 8—concerning the Prison's 2018 purchase of electronic control weapons, and policies governing healthcare, mental health services, and intake procedures—are not exempt from disclosure under the RTKL. We affirm the trial court's order with respect to these items. However, the County's evidence was sufficient to establish that records responsive to Items 6 and 7—concerning the Prison's policies governing the use of force and the confrontation of unstable individuals—are exempt from access under the personal security exemption of section 708(b)(1)(ii) of the RTKL, 65 P.S. §67.708(b)(1)(ii). We thus reverse the trial court's order with respect to these items.

Accordingly, the order of the trial court is affirmed in part and reversed in part.

_____
PATRICIA A. McCULLOUGH, Judge

20

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

York County,                          :
               Appellant           :
                              :   No.  182 C.D. 2020
          v.                            :
                              :
John Coyle                            :

## ***ORDER***

AND NOW, this 6th day of August, 2021, the order of the Court of Common Pleas of York County dated January 28, 2020 is AFFIRMED in part and REVERSED in part in accordance with the attached opinion.

_____
PATRICIA A. McCULLOUGH, Judge